# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1090


**PAMELA MERRIETT**

**VERSUS**

**BUDGET BUILD LUMBER & SUPPLY, INC.**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 1E
PARISH OF CONCORDIA, NO. 07-02508
BRENZA IRVING, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Michael G. Sullivan, Judges.


**AFFIRMED.**

**Donald J. Anzelmo**
**Snellings, Breard, Sartor, Inabnett**
**  & Trascher, L.L.P.**
**1503 North 19th Street**
**Monroe, Louisiana  71201**
**(318) 387-8000**
**Counsel for Defendant/Appellee:**
        **Budget Build Lumber & Supply, Inc.**

**George C. Gaiennie, III**
**Hughes & LaFleur**
**Post Office Box 1831**
**Alexandria, Louisiana  71309-1831**
**(318) 443-4090**
**Counsel for Plaintiff/Appellant:**
        **Pamela Merriett**

**SULLIVAN, Judge.**

Pamela Merriett appeals a judgment rendered by the Office of Workers' Compensation (OWC) in her favor and against her employer, Budget Build Lumber & Supply, Inc. (Budget). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Merriett was injured on April 3, 2002, when she twisted her right knee after stepping into a hole in the concrete floor of her workplace. She filed a petition for damages and a disputed claim for compensation with the OWC against Budget and its insurer, Louisiana Retailers Mutual Insurance Company, (hereinafter sometimes referred to collectively as "defendants") on April 2, 2007. Therein Ms. Merriett asserted that she had suffered a work-related accident on April 3, 2002, for which she was receiving weekly benefits, but that defendants had refused to pay for certain of her medical expenses. These included treatment by Dr. Maurice Gremillion, her family physician, as well as medication prescribed by him, and the mileage expenses that she had incurred in attempting to get the aforementioned treatment and prescriptions. She further asserted that she had been unable to schedule an appointment with Dr. Robert Haimson, an orthopaedist, regarding a possible knee replacement, because Dr. Haimson's office required that the insurer schedule all appointments, which it refused to do. In addition, Ms. Merriett requested that she be awarded statutory penalties and attorney fees.

Prior to the March 14, 2008 trial of this matter, the parties stipulated that Ms. Merriett was injured in an accident within the course and scope of her employment and that indemnity benefits were being paid. On the morning of trial, the parties additionally stipulated that Ms. Merriett's average weekly wage was

1

$429.88 and that her workers' compensation rate was $286.59. Following the trial, the matter was taken under advisement. The workers' compensation judge (WCJ) rendered her decision in open court on May 28, 2008, and a written judgment was signed on June 4, 2008. It provided that "there be judgment herein in favor of claimant, PAMELA MERRIETT, for indemnity benefits, medical expenses, and mileage expenses but only for the period of April 3, 2002 through July 6, 2002." All of Ms. Merriett's remaining claims were denied, and the matter was dismissed with prejudice.

Ms. Merriett now appeals, assigning the following errors:

1.   The WCJ erred in finding that plaintiff's disability ended on July 7, 2002.

2.   The WCJ erred in denying plaintiff's claims for medical expenses.

3.   The WCJ erred in denying plaintiff's claims for penalties and attorney fees.

4.   The WCJ erred in refusing to award plaintiff treatment and disability benefits for her left knee and back.

## DISCUSSION

The Louisiana Supreme Court set out the standard of review to be employed in workers' compensation cases in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.,* 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted):

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error—clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable

2

evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that the mere existence of a pre-existing condition alone does not foreclose the receipt of workers' compensation benefits where there is evidence that the on-the-job accident aggravated or accelerated the claimant's pre-existing condition. *Bush v. Avoyelles Progress Action Comm.*, 07-685 (La.App. 3 Cir. 10/31/07), 970 So.2d 63.

In its ruling, the WCJ stated:

> This court is persuaded that claimant had a pre-existing degenerative arthritic condition prior to April 3rd, 2002. This court is also persuaded that her pre-existing condition was in fact aggravated by the occurrence of an accident when claimant stepped into a hole, twisting her right knee, while working in the course and scope of her employment with defendant.
>
> . . . .
>
> [W]hile this Court finds that claimant was involved in a work-related accident on April 3, 2002, this Court also finds that the injury resulting from that occurrence resolved and any additional problems involving claimant's right knee [are] due to her pre-existing degenerative arthritic condition and her non-work-related fall of July 2002.
>
> There was no objective evidence proving a correlation between claimant's April 2002 accident and her complaints of left knee, back, neck, shoulder and arm pain. Her individual testimony and allegations are insufficient to meet her burden of proving causation in regard to complaints from those areas. This Court has found substantial evidence of claimant's lack of credibility and her testimony regarding a correlation cannot form the basis for a decision in her favor.

3

**Assignment of Error No. 1**

Ms. Merriett claims that the WCJ erred in finding that her disability ended on July 7, 2002. We have reviewed the record in its entirety and find that it supports the WCJ's finding that, although Ms. Merriett was injured in an April 3, 2002 work-related accident, any disability resulting therefrom had resolved before she re-injured her knee on July 6, 2002, when she slipped in her carport due to condensation.

Ms. Merriett testified that before working at Budget, she and her husband had owned a metal roofing business. She stated that she had injured both of her knees in 2001 when she was pushing metal sheets up to her husband, and that she had sought treatment with Dr. Gremillion. His notes indicated that she had pain in both knees at her March 14, 2001 visit. He wrote several prescriptions for Ms. Merriett and ordered her to stay off of her knees.

According to Ms. Merriett, she called Dr. Gremillion's office on the date that she was injured, and she was prescribed pain medications and advised to stay off of the injured knee. She had nevertheless continued to work as usual and had not actually been examined by a physician in relation to the accident until she sought treatment at defendants' request from Dr. John Passman, an orthopaedist and the partner of Dr. Haimson, on May 16, 2002. Dr. Passman was of the opinion that Ms. Merriett had suffered a collateral ligament sprain. His notes from her May 30, 2002 visit indicated that although Ms. Merriett still had some tenderness in her right knee, her condition was improving, and he expected her injury to resolve in six weeks. He released her to light duty for three weeks and noted that she should be able to return to full duty thereafter. Ms. Merriett made no complaints of right knee pain when she saw Dr. Passman again on June 20, 2002, despite her having told him

4

that she had "been on increased work." As correctly noted by the WCJ, it was not until Ms. Merriett's July 11, 2002 visit with Dr. Passman, less than a week after her July 6, 2002 fall, that it was recommended that she undergo an MRI and that she consider the possibility of surgery if her symptoms were to persist.

Dr. Haimson stated in his deposition that he had taken over the care of Ms. Merriett from his partner, Dr. Passman, after Dr. Passman recommended that she may need surgery. He performed arthroscopic surgery on her right knee on October 22, 2002. In response to a question posed by defendants' attorney, Dr. Haimson stated that there was nothing in his office records to indicate that Ms. Merriett had experienced any problems with her knee prior to April of 2002. He also referred to a letter that he had written on September 1, 2004, which indicated his then opinion that "she had pre-existing arthritic changes that were probably aggravated by the injury that she had." Dr. Haimson further stated that "in terms of disability, . . . it was my opinion in 2004 that you could attribute ongoing problems she was having to the arthritis that she had in her knee."

Dr. Joe Morgan, whom Ms. Merriett had also seen at defendants' request in August of 2004, noted that the medical records that he had reviewed indicated that Ms. Merriett suffered from degenerative arthritis that existed prior to her April 2002 injury at Budget. He opined that the accident caused a temporary aggravation of that pre-existing condition that should have resolved within one or two months. In his deposition, Dr. Morgan stated that he had specifically asked Ms. Merriett whether she had been previously treated for knee problems and that she had denied having any prior knee injuries.

5

The WCJ's assessment that Ms. Merriett lacked credibility is reasonable and is supported by the record, as are the factual findings made by the WCJ. The WCJ did not err in determining that Ms. Merriett's disability ended on July 7, 2002. Ms. Merriett's first assignment of error is without merit.

**Assignment of Error No. 4**

Ms. Merriett asserts that the WCJ erred in refusing to award treatment and disability benefits for her left knee and back complaints. She insists that the problems in those areas occurred as a result of her right knee injury, which caused her to limp and to develop a compensating gait.

Dr. Haimson stated in his deposition that, given the fact that Ms. Merriett had sought treatment from Dr. Gremillion in March of 2001 for bilateral knee complaints, he believed that she probably was getting arthritis in both of her knees in 2001. According to his notes of October 18, 2004, his treatment of Ms. Merriett up until that time was mainly focused on her right knee. He had no recollection of Ms. Merriett ever developing a limp. In response to questioning by Ms. Merriett's attorney as to whether he thought there was any relationship between the April 2002 knee injury and her limping and the symptoms in her back, Dr. Haimson stated only that it was possible. We note that the first mention of any complaint relating to back pain does not appear until Ms. Merriett's March 24, 2003 visit with Dr. Haimson.

Dr. Morgan noted that Ms. Merriett had shown some exaggeration in her complaints. Upon examination, he found nothing abnormal in her back, and he made no findings consistent with her subjective complaints of occasional left knee pain. Dr. Morgan was of the opinion that she had spondylosis (degenerative disease) in her lumbar spine that was not related to the accident in question. According to his notes

6

from Ms. Merriett's March 4, 2006 visit, she had begun using a cane to walk in November of 2002.

Given our previous finding that the WCJ did not err in finding that Ms. Merriett's disability ended on July 7, 2002, combined with the fact that medical records and testimony indicate that Ms. Merriett made no complaints regarding her left knee or back until well after her disability ended, we find no error in the WCJ's refusal to award Ms. Merriett treatment and disability benefits relating to her left knee and back. Ms. Merriett's fourth assignment of error lacks merit.

**Assignments of Error Nos. 2 and 3**

Ms. Merriett claims that the WCJ erred in denying her claim for medical expenses related to her treatment by Dr. Gremillion and in refusing to award her damages for defendants' refusal to authorize an appointment with Dr. Haimson regarding a possible knee replacement. She further claims that the WJC erred in denying her request for penalties and attorney fees.[1]

We have thoroughly reviewed Ms. Merriett's testimony, as well as Dr. Gremillion's records, which are contained in Exhibit P-1, and the demand letters and correspondence sent to defendants' attorney by Ms. Merriett's attorney, which encompass Exhibit P-5. None of the outstanding medical bills or requests for payment of prescriptions or mileage are dated prior to July 7, 2002, the date upon which Ms. Merriett's disability ended. In addition, the appointment that she sought to have scheduled with Dr. Haimson was in 2007, years after her disability related to her April 2002 accident ended. Accordingly, we find no error in the WCJ's refusal to award the requested medical expenses. Because those expenses were properly

---

[1]Because Ms. Merriett discusses these two assignments of error together in her appellate brief, we will address them simultaneously in this opinion as well.

denied, defendants likewise cannot be held liable for refusing to pay Ms. Merriett's medical expenses that were unrelated to her April 3, 2002 accident. The WCJ did not err in denying Ms. Merriett's claim for penalties and attorney fees.

## DISPOSITION

For the foregoing reasons, the judgment of the OWC is affirmed in its entirety. All costs of this appeal are assessed to Pamela Merriett.

**AFFIRMED.**