WILLIAMS, J.
hln this workers’ compensation case, the employer, the Town of Grambling, refused to pay for the claimant’s recommended surgery. The workers’ compensation judge (“WCJ”) rendered judgment in favor of the claimant, ordering the Town of Gram-bling to pay for the claimant’s surgery. For the following reasons, we affirm.
FACTS
The claimant, Darren Crawford, was employed as a sanitation worker for the Town of Grambling. On October 9, 2001, the claimant was injured on the job when he lifted a garbage can. The claimant testified that he reported to his treating physician that he was experiencing pain in his right arm, neck and back.
Six weeks after the accident, the claimant was referred to Dr. Michael Ehrlich, a neurologist, for treatment. Initially, the claimant’s cervical complaints were the sole focus of his medical treatment. Over time, the claimant was evaluated and treated by a number of physicians, including Dr. David Cavanaugh, a neurosurgeon. In a document dated May 29, 2003, Dr. Cava-naugh noted the claimant’s cervical complaints and added that the claimant was experiencing “some low back pain with walking.” In a reported dated September 26, 2003, Dr. Cavanaugh noted that the claimant “states when he is walking, he’ll have some increased low back pain, and wonders if that is connected to his neck.”
In 2003, the claimant was referred to another neurosurgeon, Dr. Anil Nanda. Dr. Nanda recommended that the claimant undergo a cervical laminectomy. However, the claimant declined to do so, opting, instead, to continue conservative treatment.
^Meanwhile, the claimant’s lumbar issues worsened. The claimant testified that *662 he informed Dr. Ehrlich that he was experiencing back pain; however, Dr. Ehrlich did not note the claimant’s lumbar complaints in the medical records until 2005, when, according to the claimant, his back pain substantially worsened. More specifically, on August 3, 2005, the claimant stated that he awakened with severe back pain. He presented • to Dr. Ehrlich; he reported that he had not lifted any heavy objects or injured himself in any way. Initially, Dr. Ehrlich considered the complaint of back pain to be “acute” and/or “age related.” However, he later concluded that the claimant’s lumbar complaints were “definitely related” to post-accident decon-ditioning.
The employer initially paid for medical treatment related to the claimant’s lumbar complaints. However, in 2008, a new claims adjuster, Della Hildebrand, was assigned to the claimant’s case. Hildebrand scrutinized the claimant’s medical records and concluded that his lumbar issues were not related to his work injury. Hildebrand instructed the case manager “to inform Dr. Nanda that [the claimant’s] lumbar issues were not related to the work accident.” Consequently, the employer ceased payments for medical treatment related to the claimant’s lumbar complaints.
Over the years, the claimant continued to be evaluated by Dr. Nanda at intermittent intervals. Although Dr. Nanda had recommended a cervical laminectomy, he noted that the claimant could continue conservative treatment until he could no longer tolerate the symptoms. In 2007, Dr. Nanda began evaluating the claimant for both cervical and lumbar complaints. In 2012, Dr. Nanda recommended that the claimant undergo both cervical and lumbar laminectomies. Again, the claimant opted to ^continue conservative treatment instead. As the claimant’s symptoms worsened, he decided to undergo the cervical and lumbar surgeries. The employer agreed to pay for the cervical surgery, but denied payment for the lumbar surgery.
On January 25, 2013, the claimant filed a disputed claim for compensation, seeking a judgment compelling the employer to pay for the lumbar surgery. Prior to the trial, the parties stipulated as to the following facts: the claimant sustained a compensa-ble injury on October 9, 2001; the claimant sustained cervical injuries as a result of the accident; surgery for the cervical injuries was recommended; the claimant elected not to have the cervical surgery at that time; the employer did not deny payment for the cervical injuries; the employer initially paid for the treatment of the claimant’s lumbar complaints; the employer stopped payment for further treatment when it determined that the claimant’s lumbar complaints were not caused by the work accident; and the claimant’s treating physician had recommended surgery for the claimant’s lumbar complaints.
During the trial, the claimant testified as follows: on October 9, 2001, he attempted to lift a garbage can and “went numb in [his] right arm and under [his] neck”; his “lower back was kind of bothering” him, but the back pain “wasn’t as severe” as the pain in his neck; he thinks he may have told Dr. Ehrlich about his back injury when he began treatment; however, Dr. Ehrlich “wouldn’t treat [him] for it yet”; the pain in his lower back became more severe “as time went on”; he began experiencing numbness in his leg and “all up under the bottom of [his] feet”; Dr. Nanda provided treatment for his neck and back; Dr. Nanda informed him that he needed surgery on his neck and back; he believed the pain in his back is related to the accident at | ¿work; he was not having any back problems prior to the work accident; and he has not done anything to injure his back since the work accident.
*663 On cross-examination, the claimant testified that he did not report that he was experiencing back pain on the day of the accident. He also stated that he told Dr. Ehrlich about his back pain and Dr. Ehrlich should have noted the back pain in his medical records. The claimant testified that he does not know why his back pain was not mentioned in Dr. Ehrlich’s notes until 2005.
The claimant also responded to questions posed by the WCJ. The colloquy was as follows:
[WCJ]: [W]hen did you first start complaining about your back?
[CLAIMAINT]: I might have told Dr. Ehrlich about it[.] ... [I]t hadn’t got[ten] severe like it was[.] As time went on, it got worse, you know, during morning and like that, if I just couldn’t hardly move or walk.
[WCJ]: But that wasn’t [until] 2005?
[CLAIMAINT]: Yes, ma’am.
[WCJ]: So four years later?
[CLAIMANT]: Yes, ma’am.
[[Image here]]
I had been having a little symptoms. When I walked, it was numb and I was telling Dr. Ehrlich about it, you know, when I walked it kind of was getting numb down in my legs and in my feet area. But ... as time got on and when I woke up one morning it was just like I couldn’t get up out the bed[.] So that’s when I went on to Dr. lsEhrlich and told Dr. Ehrlich about the problem[.]
[[Image here]]
Della Hildebrand also testified at trial. She testified as follows: she was assigned to the claimant’s case in 2008; when she conducted a review of his file, she noticed that, in 2005, Dr. Ehrlich noted that the claimant had begun experiencing severe back pain when he got out of bed one morning; prior to that notation, there was nothing in the claimant’s medical records concerning his lower back; she believes the other claims adjusters “totally disregarded” the medical reports in the claimant’s file; and after she reviewed the records, she instructed the nurse case manager to inform Dr. Nanda that the claimant’s lumbar issues were not related to the work accident.
The deposition testimony of Drs. Ehrlich and Nanda was introduced into evidence. Dr. Nanda testified that he began treating the claimant in 2003 for neck pain and numbness in his right arm; over time, he began treating the claimant for back pain. Dr. Nanda stated that by 2013, the claimant had “a ten-year history of back and neck pain” and had long been a candidate for surgery. He also stated, “[B]ased on the veracity of the claimant,” both the lumbar and cervical injuries were related to the claimant’s work accident.
Dr. Ehrlich testified that the claimant’s lumbar complaints were “definitely related” to the work accident “[i]n an indirect way.” He explained as follows:
[Tjhere’s that whole story of the leg bone’s connected to the knee bone’s connected to the ankle bone. And I’m talking about it in that way. Obviously, the human body, all the parts are connected. If somebody hurts their neck, a lot of | fitimes their shoulder hurts. If somebody has a headache, their neck hurts, also. So, in a way, that his original injury was lifting a garbage pail where he kind of wrenched his neck and got a herniated disc and has nerve pain down his arm. You know, although he didn’t mention to me the first day anything about his back, a few years later, for unknown reason, because he said he didn’t have an injury, he awoke with severe back pain to this day, occurring in an overweight, debilitated, former worker with *664 a work injury. And so in a debilitated, obese, pooped-out, easy-to-injure type way, it’s related, but not in a direct way. In an indirect way,
⅝ ⅝ ⅜ „
It’s definitely related, in my opinion. It’s not directly related.
The WCJ found that the claimant’s lumbar complaints were related to the work accident and ordered the employer to cover the costs of the lumbar laminectomy as recommended. The WCJ stated, “Both of the physicians who treated the claimant for the greatest length of time found a causal relationship between the recommended neck and lumbar surgery and the accident of October 9, 2001.” The WCJ denied the claimant’s request for penalties and attorney fees.
The employer now appeals.
DISCUSSION
The employer contends the claimant did not meet his burden of proving a causal relationship between the work accident and his lumbar symptoms. According to the employer, the claimant’s medical records indicated that he did not begin to complain of back pain until August 3, 2005, nearly four years after the work accident. The employer also argues that Drs. Ehrlich and Nanda were unable to definitively testify that the lumbar injury was related to the work accident.
[7An employee is entitled to workers’ compensation benefits if he “receives personal injury by accident arising out of and in the course of’ his employment.. LSA-R.S. 23:1031(A). The claimant is not required to prove the exact cause of his disability, but he must demonstrate, by a preponderance of the evidence, that the accident has a causal connection with it. Iberia Medical Ctr. v. Ward, 2009-2705 (La. 11/30/10), 53 So.3d 421; Hill v. IASIS Glenwood Regional Medical, 50,531 (La. App. 2 Cir. 5/18/16), 195 So.3d 536, writ denied, 2016-1357 (La. 11/7/16), 2016 WL 6780038, 209 So.3d 104. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good health, but commencing with the accident, the symptoms- of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of a causal relation between the accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. Doucet v. Baker Hughes Prod. Tools, 93-3087 (La. 3/11/94), 635 So.2d 166; Hill, supra.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dept., 2009-0520 (La. 10/20/09), 23 So.3d 275; Hill, supra. Under this rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. Id. When there are two permissible views of the evidence, the WCJ’s choice between them can never be manifestly erroneous or clearly wrong. Id. The reviewing court is emphatically not permitted to reweigh the evidence or reach its own factual conclusions from the record. Marange v. Custom Metal Fabricators Inc., 2011-2678 (La. 7/2/12), 93 So.3d 1253; Hill, supra.
In the instant case, it is undisputed that the claimant sustained an injury arising out of and in the course of his employment. The employer stipulated that the claimant’s cervical injury was causally connected to the accident. However, the issue in dispute is whether the claimant met his burden of proving that his lumbar injury has a causal connection to the work accident.
*665 The claimant s medical records reveal that his significant cervical injury was the initial primary focus of his medical treatment. The claimant provided uncontrovert-ed testimony that his lower back “was kind of bothering” him after the accident, but the back pain was not as severe as the pain in his neck. He also testified that he initially began experiencing “little symptoms”; however, the pain in his back and numbness in his legs worsened over time. Further, he testified that he had never experienced back pain prior to the work accident in 2001, and he had not suffered any injury, other than the work-related injury.
Additionally, Dr. Ehrlich opined that the claimant’s lumbar symptoms were “definitely related,” albeit indirectly, to the work accident. Dr. Ehrlich clearly explained the dynamics of the human body and provided a reasonable explanation as to how the back injury was causally related to the claimant’s work accident.
The employer contends that the claimant did not begin to complain of back pain until 2005, as noted by Dr. Ehrlich. However, that contention is contradicted by the claimant’s medical records. Although Dr. Ehrlich did not note the claimant’s lumbar complaints until 2005, the medical records 19reveal that the claimant was complaining of lower back pain as early as 2003, while being treated by Dr. Cavanaugh.
Based on this record, we find that the WCJ was not manifestly erroneous in concluding that the claimant’s lumbar injury was causally related to the work accident. As stated above, the claimant testified that he was not experiencing back pain prior to the accident. He stated that his back pain developed soon after his work accident and worsened over time. Moreover, the medical evidence, particularly Dr. Ehrlich’s testimony, showed a reasonable probability of a causal relation between the work-related accident and the claimant’s lumbar symptoms.
CONCLUSION
For the reasons set forth herein, the WCJ’s judgment is affirmed. Costs of this appeal are assessed to the appellant, the Town of Grambling, in the amount of $672.98, in accordance with LSA-R.S. 13:5112(A).
AFFIRMED.