MOORE, J,
hlASIS Glenwood Regional Medical Center (“Glenwood”) appeals a judgment of the Office of Workers’ Compensation finding that Lisa Hill, a registered nurse, sustained a work-related injury and was entitled to temporary total disability (“TTD”) benefits from the last day she worked and to medical services, including a back surgery. We affirm.

Factual Background

Ms. Hill had been employed by Glen-wood as an RN on the cardiac floor since October 2012, at an average weekly wage of $1,024.83. She testified that about 5:30 pm on April -30, 2013, she was trying to reposition a large patient from the right to the left side of her bed, when she (Ms. Hill) felt a sudden pain in her neck and back. Aside from the patient, no one else witnessed the incident. Ms. Hill completed her shift, but the' next day, May 1, she reported the incident to her supervisor and then-went'to her family doctor, Dr. Yar-brough, and .was actually seen by a nurse practitioner, Matilda Stephens.
On the May 1 visit, Nurse Stephens detected some sciatic nerve damage and ordered X-rays which showed bilateral L5 spondylolysis with Grade 1 spondylolisthe-sis; she took Ms, Hill off work, gave her some pain medications and muscle relaxers and ordered an MRI. Glenwood began paying her TTD benefits of $605 a week, effective May 14.
On referral from Dr. Yarbrough’s office, Ms. Hill went, to a neurosurgeon, Dr. Jorge Alvernia, on June 17. She reported a sudden onset of pain from lifting a patient, describing it as “dull and gnawing” but with no radiating effects. The MRI, taken May 16, showed L5/S1 Grade 1 | gspondylolisthesis, for which Dr. Alvernia recommended physical therapy. He also released Ms. Hill to return to light-duty work and ordered a functional capacity evaluation (“FCE”), Ms. Hill testified that she attended therapy for about six weeks and returned to work at Glenwood, in the “chart audits” office and at her normal pay. She also admitted that after seeing Dr. Alvernia, she called Dr. Yarbrough’s office and tried to get a referral to a different neurosurgeon, but they never gave- her an answer 5
Ms. Hill took the FCE on August 23; the report is not in the record, but Dr, Alvernia testified that it showed she could “tolerate the physical demands of the medical work load.” Despite the spondylolis-thesis at L5/S1 and the appearance of “new symptoms,” he felt she could work. Ms. Hill, however, testified that the exertion of the FCE increased her pain level and caused a new pain, radiating down her right leg. Ms. Hill saw Dr. Alvernia’s colleague, Dr. Baker, three times in October through December, always complaining of this radiating pain, sometimes into the left leg. Dr, Alvernia testified that as of December 18, he could make no objee- *539 tive findings and would recommend treatment at a pain clinic. He released her to full-duty work on December 9;
At Glenwood’s request, Ms. Hill submitted to an examination by its choice of neurosurgeon, Dr. Jorge Martinez, on January 2, 2014. Glenwood did not offer Dr. Martinez’s report into evidence or call him as a witness.
Ms. Hill testified that she worked without restrictions for a while, but the pain got worse, radiating all the way down to her left foot and even making her unstable. She kept at the job until January 22, 2014, when she |squit and moved to the Dallas area to live with her boyfriend.
Once in Dallas she requested, and the OWC approved, treatment with a.new doctor, Dr. Shaad Bidiwala, at. Texas Neurosurgery. ■ Based on’ his examination, a new MRI and the history provided by Ms. Hill, Dr. Bidiwala found an aggravation of spon-dylolisthesis, caused or contributed to by the accident at Glenwood on April 30, 2013. He recommended surgery to correct the problem, took her off work as of February 28, 2014, and projected that she could not return to work until post-surgery. , He admitted there was no. published scientific literature stating that trauma can induce spondylolisthesis, but was firm in his opinion that the accident Ms. Hill described aggravated, it and made it symptomatic.

Procedural History

On March 3, 2014, Ms. Hill sent a demand letter to Glenwood for the surgery recommended by Dr. Bidiwala. Glenwood did not respond; Ms. Hill filed the instant contested claim on July 1,2014.,
Glenwood admitted only Ms. Hill’s former employment status, average weekly wage and compensation rate. It denied that any accident occurred, as it was not reported until the next day, and that she was currently disabled, as Dr. Alvernia had twice released her to'return to work. Mostly, however, it alleged that the “incident” of April 30, 2013, neither caused nor contributed to her current medical condition. It produced a sheaf of medical records showing an array of prior complaints of back pain, including (1) a November 1999 visit to West Carroll. Health System for back and body pain, with a diagnosis of bilateral spondylolysis at L5 but , no Insignificant spondylolisthesis; (2) three treatments with Dr. Dan Holt, a chiropractor in Monroe, in April and'May 2012, for a pinched nerve'in her right shoulder and neck, and low back pain; and (3) nine treatments at “The Joint,” a chiropractic clinic in Monroe, from July to September 2012, for essentially the same complaints. Glenwood also argued that Ms. Hill omitted to mention these prior issues to Drs. Alvernia and Bidiwala; on cross-examination, counsel got Dr. Bidiwala to admit, “I’m not contending that the spondylolis-thesis was caused by her lifting the pa-tientfj”
. At trial, in January 2015, the only live witness was Ms. Hill, who described the accident, her course of medical treatment and her gradually worsening pain. ■ Glen-wood attempted to impeach her with her pretrial deposition, in which she did not recall many details of her prior medical issues. She responded that most of those prior issues were in the neck and shoulder, which she ascribed to picking up babies and carseats in her prior work as a sitter, but said they were never really disabling, like -the current pain. She also showed that she promptly supplemented her deposition to include a- full list of doctors and treatment.
Ms. Hill also offered OWC documents relating to her claim, and her amended answers to interrogatories admitting her prior medical treatment.
*540 Glenwood offered hospital records from West Carroll Health System and from its own physicians, Drs. Alvernia and Baker, and office records from the chiropractors. The parties jointly offered the depositions of Drs. Alvernia and Bidiwala, and of Nurse Stephens.
| ¡¡Roughly four months after trial, the WCJ ruled from the bench. After recapping the facts, she stated that she “put great emphasis on this change in condition” in reaching her conclusion, especially that the MRI ordered by Dr. Bidiwala showed “more encroachment on the nerves than what appeared in the earlier MRI.” She accepted Dr. Bidiwala’s opinion that Ms. Hill’s spondylolisthesis probably predated the accident but was not symptomatic until after it. The WCJ cited the prior treatment for neck and shoulder pain, but applied the presumption of causation to find that the accident caused Ms. Hill’s current condition. She therefore awarded TTD of $605 a week, effective February 28, 2014, until Ms. Hill was released to return to work, and ordered Glenwood to provide medical treatment, including the surgery recommended by Dr. Bidiwala. Finally, the court cited Ms. Hill’s numerous prior medical issues and misstatements in the early phase of the claim, and denied the claim for a penalty and attorney fee.
After the WCJ rendered judgment to this effect, Glenwood took the instant appeal. Later, in November 2015, it filed an exception of prescription. It now raises four assignments of error.

Discussion: Finding of Accident and Causation

By its first assignment of error, Glen-wood urges the WCJ committed manifest error in finding an accident occurred, as the incident was unwitnessed and Ms-. Hill’s testimony was generally not credible. By its second assignment, argued together with the first, Glenwood urges the WCJ committed manifest error in finding disability and causation, as Ms. Hill had significant preexisting spinal problems, gave inaccurate histories, and her [ ¡¡lead physician, Dr. Bidiwala, relied on the bad medical history she provided. Glenwood cites the preexisting injury rule, Peveto v. WHC Contractors, 98-1402 (La.1/14/94), 680 So.2d 689, and the jurisprudence that “evenly balanced” evidence will not suffice to prove that an accident occurred, Lowe v. Skyjacker Suspensions, 45,058 (La.App. 2 Cir. 3/3/10), 32 So.3d 340. It shows that this court may reverse a finding of causation (or of aggravation) if it finds that the claimant’s credibility is lacking, Green v. Thompson Home Health, 46,593 (La.App. 2 Cir. 9/21/11), 73 So.3d 490, writ denied, 2011-2460 (La.1/20/12), 78 So.3d 143. It submits that the more reasonable assessment of the medical evidence, and of Ms. Hill’s medical history, is that she suffers degenerative back disease, but such disease is simply not covered by the workers’ compensation law, as La. R.S. 23:1031 A requires an “accident arising out of and in the course of’ employment, and R.S. 1021(1) defines an “accident” as a sudden or violent event and “more than simply a gradual deterioration or progressive degeneration.” Glenwood closely parses the record, pointing out every instance of Ms. Hill’s failure to admit her prior medical complaints, and argues that had he received an honest medical history, Dr. Bidi-wala would not have found causation.
An employee is entitled to workers’ compensation benefits if she “receives personal injury by accident arising out of and in the course of’ her employment. La. R.S. 23:1031 A. A claimant’s testimony alone may be sufficient to establish an accident provided that “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, *541 |7and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992); Brown v. Offshore Energy Serv., 47,392 (La.App. 2 Cir. 8/8/12), 104 So.3d 494. In determining whether the Bruno factors are satisfied, the courts commonly consider (1) late report, (2) supervisor or coworker testimony, (3) family and friends testimony, (4) medical evidence, (5) continuing to work, and (6) prior injuries. Brown v. Offshore Energy Serv., supra; H. Alston Johnson III, Workers’ Compensation Law & Practice (13 La. Civ. Law Treatise) § 253 (5 ed. 2010); 1 Denis Paul Juge, La. Workers’ Compensation, § 8:1 (2 ed. 2002). .
An accident is an “unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and .directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1); Iberia Medical Ctr. v. Ward, 2009-2705 (La.11/30/10), 53 So.3d 421. The requirement of a work-related accident has consistently been interpreted liberally by the courts. Iberia Medical Ctr. v. Ward, supra, and citations therein. A preexisting medical condition does not bar an employee from recovery if she establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed. Peveto v. WHC Contractors, supra; Henderson v. Graphic Packaging Int'l, 48,491 (La.App. 2 Cir. 11/20/13), 128 So.3d 599.
|sThe claimant is not required to prove the exact cause of her disability, but she must demonstrate by a preponderance of the evidence that the accident has a causal connection with it. Iberia Medical Ctr. v. Ward, supra; Brown v. Offshore Energy Serv., supra. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of a causal relation between the accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. Doucet v. Baker Hughes Prod. Tools, 93-3087 (La.3/11/94), 635 So.2d 166; Brown v. Offshore Energy Serv., supra.
Factual findings in workers’ compensation cases are subject to the manifest error rule. Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275. Under this rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. Id. When there are two permissible views of the evidence, the WCJ’s choice between them can never be manifestly erroneous or clearly wrong. Id. The reviewing court is emphatically not permitted to reweigh the evidence or reach its own factual conclusions from the record. Marange v. Custom Metal Fabricators Inc., 2011-2678 (La.7/2/12), 93 So.3d 1253.
As to the occurrence of an accident, Ms. Hill testified that the only other witness was the patient she was attempting to move. Given the nature of her work, there is nothing suspect about the absence of any corroborating |flwitnesses. She also testified it happened around 5:30 pm, near the end of her shift, and she did not drop everything and immediately report it. Instead, she did so the next morning, at the top of her shift, and went to her family doctor the same day, describing the incident and her symptoms. This is not an *542 undue delay in reporting. We also note that Glenwood initially accepted her account of the accident and paid her TTD beginning May 14. Although not determinative, this provides additional support- for the finding that an accident truly occurred. We perceive no manifest error in the WCJ’s finding of a work-related accident.
As for causation, the evidence is somewhat closer. Glenwood has ably shown that Ms. Hill had a significant history of medical treatment, dating back to a 1999 diagnosis of spondylolysis at L5, and chiropractic adjustments in 2012 for a pinched nerve in her shoulder and neck, with some pain in the lower back. Glenwood also shows that, at least initially, Ms. Hill failed to mention these prior complaints when she sought treatment for the instant injury, an omission that may have influenced her diagnosis. Finally, Glenwood shows that Ms. Hill’s choice of neurosurgeon, Dr. Bidiwala, admitted that no published scientific literature states that trauma can induce her current condition, spondylolisthe-sis, and he declined to agree that it was caused by lifting the patient. This evidence tends to negate a finding of causation.
On the other hand, the record does not show that her prior complaints ever caused her to miss any work, and even though she sought medical attention, she testified they were “just minor things.” She also testified that ImDrs. Alvemia and Bidiwala did not specifically ask her about prior back problems, and the doctors did not refute this in their depositions. She candidly admitted that she came to her deposition unprepared to recall details about medical complaints-'and diagnoses dating back 15 years, but as soon as she was reminded of them she supplemented her answers. The omissions "in the histories provided to Ms. Hill’s doctors, and the discrepancies in her deposition, are not unreasonable and do not subvert the WCJ’s finding of causation. Hubbard v. Allied Building Stores, 41,534 (La.App. 2 Cir. 11/1/06), 942 So.2d 639; White v. Ratcliff Const. Co., 2008-0705 (La.App. 3 Cir. 12/10/08), 999 So.2d 275.
Finally, we recognize Dr. Bidiwala’s expert opinion that Ms. Hill’s disabling condition, spondylolisthesis, is not a recognized consequence of trauma, and his reluctance to say that moving a patient caused it. As noted, however, the claimant is not required to prove the exact cause of her disability. Iberia Med. Ctr. v. Ward, supra; Brown v. Offshore Energy Serv., supra. She need only make a credible showing that she was in good health before the accident, but suffered symptoms after it, in circumstances that raise a natural inference of causation. Doucet v. Baker Hughes Prod. Tools, supra; Brown v. Offshore Energy Serv., supra. Heavy lifting has long been associated-with back injuries. Bruno v. Harbert Int’l Inc., supra; Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628 (1959). Notably, even after counsel showed Dr. Bidiwala records of Ms. Hill’s earlier back complaints, he would not change his view that moving a heavy patient aggravated her spondylolisthesis and made it symptomatic. On this Inrecord, we cannot say the WCJ was plainly wrong to find causation. These assignments of error lack merit.

Finding of Disability

By its third assignment of error, Glenwood urges the WCJ committed manifest error in awarding any disability benefits, as Dr. Alvernia twice released Ms. Hill, first to light-duty and then to full-duty work, and she performed both for several months. Glenwood submits that in denying the claim for a penalty and attorney fee, the WCJ properly found a lack of candor and credibility (“misrepresentations were made” which “caused this Court *543 to question claimant’s credibility”), and concludes that this finding should apply equally to refute Ms. Hill’s- claimed inability to work.
Benefits for TTD are based on “temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at- the time of injury was particularly fitted by reason of education, training, or experience!/]” La. R.S. 23:1221(l)(a). TTD may not be awarded if the claimant can engage in odd-lot employment, sheltered employment,- or employment while working in any pain. R.S. 23:1221(l)(b). Compensation may be made “only for such injuries as are proven by competent evidence, or for which there are or have been objective conditions or. symptoms proven, not within the -physical or mental control of the injured employee himself.” La. R.S. 23:1317 A. The finding of disability, however, is 'a legal rather than a purely medical | ^determination. Harper v. Horseshoe Casino, 41,470 (La.App. 2 Cir. 10/19/06), 942 So.2d 589, and citations therein. The WCJ must look to the totality of the evidence, both lay and medical. Aucoin v. CNA, 2012-0144 (La.App. 1 Cir. 9/21/12), 111 So.3d 31, and citations therein.
The' medical evidence was conflicting: Glenwood correctly shows that Dr. Alver-nia released Ms. Hill to light-duty work in June 2013 and to full-duty work in December 2013, while Dr. Bidiwala took her off all work in February 2014. Although Glenwood assailed Ms. Hill’s credibility, it offered no medical evidence to refute Dr. Bidiwala’s opinion, supported by MRI results, that as of February 2014 her spon-dylolisthesis made her unable to work. We also note that in January 2014, Glen-wood sent Ms; Hill to Dr. Martinez for an evaluation but did not offer his report or deposition". The failure to produce this evidence raises a presumption that it would have been adverse to Glenwood’s position. Brock v. Frymasters, 41,561 (La.App. 2 Cir. 11/1/06), 942 So.2d 613; Tidwell v. Premier Staffing Inc., 2013-185 (La.App. 3 Cir. 10/30/13), 127 So.3d 41.
We reiterate that the ‘ assessment of a claimant’s credibility is entirely the province of the factfinder.- Marange v. Custom Metal Fabricators, supra; Galiano v. Lucky Coin Machine Co., 2015-2065 (La.1/8/16), 184 So.3d 689.‘ While the WCJ may have questioned Ms. Hill’s candor in reporting prior back problems to healthcare providers, this does not mean the WCJ abused her discretion in accepting Ms. Hill’s account of gradually worsening pain, aggravated by attempts to work through the pain, and supported by Dr. Bidiwala’s MRI results. On this evidence, we cannot say Lathe WCJ abused her discretion in finding Ms. Hill qualified for TTD. This assignment of error lacks merit.

Prescription

By its final assignment of error, Glenwood urges that Ms. Hill’s claim was prescribed. Under La. R.S; 23:1209,-all claims must be' filed within one year' after the accident or, if any indemnity benefits were paid, within one year after the final indemnity payment, but in no event more than three years after the accident. Lebert v. McNeese State Univ., 2005-856 (La.App. 3 Cir. 2/1/06), 932 So.2d 678; Robbins v. Schumpert Med. Ctr., 35,932 (La.App. 2 Cir. 4/3/02), 814 So.2d 737, writ denied, 2002-1521 (La.9/30/02), 825 So.2d 1192. Glenwood shows that the accident was April 30, 2013, and the final payment of TTD was June 17, 2013, but the disputed claim was not filed- until July 1, 2014, over one year later. It concludes that for this reason, the claim should be dismissed.
*544 The prescription of workers compensation claims is regulated by La. R.S. 23:1209, which provides, in pertinent part:
A. (1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death * * * a formal claim has been filed as provided in Subsection B of this Section and in this Chapter.
(2) Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable [for supplemental earnings benefits] this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).
(3) When the injury does not result at the time of or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be 114forever barred unless the proceedings have been begun within three years from the date of the accident.
The courts have liberally construed Subsection A(3)’s term “the time the injury develops” in cases where the claimant attempts to continue working until no longer able to perform her employment duties. Sevin v. Schwegmann Giant Supermarkets Inc., 94-1859 (La.4/10/95), 652 So.2d 1323, and citations therein; Huckaby v. BellSouth Telecomms. Inc., 42,255 (La.App. 2 Cir. 7/18/07), 961 So.2d 651, writ denied, 2007-1715 (La.11/2/07), 966 So.2d 607. An employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disabling injury, rather than from the first appearance of symptoms or from the first date of treatment. Sevin v. Schwegmann, supra. In other words, “the time the injury develops” is interpreted to mean the date the disability develops, usually the time it becomes clear that the worker can no longer perform her employment duties in a satisfactory 'manner. Id. The courts will not penalize an employee for attempting to remain in the workforce to support her family or in the hope that the condition will improve. H. Alston Johnson III, op. cit, § 384 (5 ed. 2010). Requiring the injured employee, who is not yet disabled, to assert her claim within one year of the accident, or one year of the last payment of benefits, in order to preserve the cause of action would encourage needless litigation. Sevin v. Schwegmann, supra.
The instant record shows that this claim was not prescribed. The accident was on April 30, 2013, and Ms. Hill initially missed about six weeks of work, receiving her final TTD payment on June 17; she returned to liBwork at light duty for several months and complained of increasing pain; Dr. Bidiwala finally took her off work on February 28, 2014. Under R.S. 23:1209 A(3), as interpreted in Sevin, the latter date is the time the injury developed. Ms. Hill plainly filed her disputed claim within one year of that date, and within three years of the accident. This assignment of error lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. IASIS Glenwood Regional Medical Center is to pay all costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before DREW, MOORE and GARRETT, JJ.
Rehearing denied.