Judgment rendered October 30, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,908-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ERNEST SMITH                                    Plaintiff-Appellant

versus

NU VERRA ENVIRONMENTAL                          Defendant-Appellee
SOLUTION

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of Caddo, Louisiana
Trial Court No. 1801708

Linda Lea Smith
Workers' Compensation Judge

* * * * *

DAVIS LAW OFFICE, LLC                           Counsel for Appellant
By: S.P. Davis, Sr.

PETTIETTE, ARMAND, DUNKELMAN,                   Counsel for Appellees,
WOODLEY, BYRD & CROMWELL, L.L.P.                Nu Verra Environmental
By: Robert A. Dunkelman                         Solution and Insurance
                                                Company of the State of
                                                Pennsylvania

* * * * *

Before WILLIAMS, MOORE, and COX, JJ.

COX, J., concurs with written reasons.

**WILLIAMS, C.J.**

This is a workers' compensation case. The claimant appeals from a judgment of the Office of Workers' Compensation ("OWC") denying his claim for temporary total disability ("TTD") benefits, penalties and attorney fees. For the reasons set forth below, we reverse in part and render judgment in favor of claimant, Ernest Smith. We affirm that portion of the judgment which denied claimant's request for penalties and attorney fees.

## FACTS AND PROCEDURAL BACKGROUND

The claimant, Ernest Smith, worked full-time for Nu Verra Environmental Solutions ("Nu Verra") driving an 18-wheeler pump truck. On August 28, 2009, while en route to a well site, the truck claimant was driving was struck when another 18-wheeler came around a curve at an excessive speed and crossed into claimant's lane of travel. The other driver did not survive the accident, and claimant was injured when his truck ran off the road.[1] Claimant treated with Dr. Clemens Soeller, an orthopedic specialist, from September 1, 2009, through December 29, 2009, his primary complaints being severe lacerations to and pain in his left elbow. Claimant also reported mild neck and shoulder pain, as well as pain radiating down his left arm.

Dr. Soeller lifted all orthopedic restrictions for claimant to return to work on October 16, 2009, and certified maximum medical improvement regarding his accident-related injuries on October 30, 2009. Dr. Soeller's medical assessment of claimant on November 20, 2009, was left elbow laceration-now healed; cervical degenerative arthritis with C6 radiculopathy

---

[1] Both trucks caught on fire; claimant was able to get out of his 18-wheeler, but the other driver could not get out of his truck and died on the scene.

into forearm; and, possible intermittent carpal tunnel syndrome. On December 29, 2009, claimant was cleared by Dr. Soeller to return to his full work duties. Dr. Soeller stated, "He does not want to return to work due to his continuing psychological issues . . . but he needs to get back to work."

Claimant did not immediately return to work, but instead assisted his wife with her barbecue business in 2010. After passing his CDL medical exam in 2011, claimant returned to his pre-accident job with Nu Verra. He worked as a truck driver for Nu Verra until 2016. According to claimant, he later changed jobs because he felt that he could no longer perform some of the necessary functions associated with his job, such as climbing a ladder and handling heavy hoses.

Claimant went to Dr. John Ferrell, an orthopedic specialist, for medical treatment from August 23, 2010, until July 16, 2012, with complaints of left shoulder and elbow injury, arm numbness, and neck pain. Based on the results of an MRI, Dr. Ferrell noted "multi-level disc degeneration/protusion spondylo C5-6." Dr. Ferrell noted in claimant's medical records, "[D]iscussed patient seeing a spine doctor. He is not interested in pursuing this because he would not want to have any surgery. Patient is doing well getting by at this point."

On March 14, 2012, claimant was referred by defendants to Dr. Karl Bilderback for an independent medical examination ("IME") in connection with a June 2011 work-related injury, a broken right wrist. In the "History" section of his IME report, after noting that the numbness and tingling in claimant's right extremity were not related to the June 3, 2011, work injury, Dr. Bilderback noted, "[I]t is perfectly within reason to expect that

2

Mr. Smith could have developed a right-sided cervical radiculopathy[2] [as a result of the August 2009 accident] even though his vehicle was impacted on the left. Due to the significant forces imparted on the vehicle and subsequently onto the occupant, Mr. Smith could develop a radiculopathy on either side, and would not be restricted to only left-sided radiculopathy simply because the vehicle was impacted on the left." In the "Assessment" section of his IME report, Dr. Bilderback opined, "Mr. Smith appears to have some evidence of cervical radiculopathy on the right. . . . I do not believe that this is related to his most recent work accident, and by his history and review of the records, would appear to be related to his original motor vehicle accident on August 29, 2009. . . . He is showing evidence of a clinical radiculopathy, however I do not believe that this is related to his most recent accident, and believe that it is related to his previous accident. As indicated above, I believe that he would be best suited by having an EMB/NCS of his right upper extremity from his August 29, 2009, injury."

On October 17, 2012, claimant sought treatment from Dr. Milan Mody, an orthopedist. Claimant related that he had been experiencing neck pain since his accident in August 2009. Dr. Mody's written assessment was "[degenerative disc disease] with collapse, C5-6 with collapse and osteophytes, mild retro spondy C5-6." Dr. Mody also noted that claimant was a candidate for surgery, although he has chosen not to have surgery at this time.

---

[2] Radiculopathy is the medical term for the condition commonly referred to as a pinched nerve, and it is a set of conditions in which one or more nerves are affected and do not work properly (a neuropathy). This can result in radicular pain, weakness, numbness, and difficulty controlling specific muscles.

On June 18, 2015, claimant was treated by Chris Howard, a nurse practitioner with Dr. Pierce Nunley. Claimant complained of neck pain, left upper extremity pain, and back pain with bilateral lower extremity pain. Howard noted that claimant's neck pain had progressively worsened, and that in 2012 he had not been interested in surgery. According to Howard, claimant related, "[I]t has gotten to the point now where the pain is significantly debilitating."

Claimant, by this time, had filed a workers' compensation claim against Nu Verra seeking court approval to change his treating physician. In connection with this claim, Dr. Nunley rendered a second medical opinion at the request of the defendants, opining that "more likely than not, [Smith's] degenerative conditions are his current cause of ongoing symptoms rather than any specific accident."

After a hearing, the WCJ approved claimant's request to be examined by Dr. Bharat Guthikonda, a neurosurgeon. However, because University Health refused to accept claimant as a patient in connection with a workers' compensation claim, the parties agreed that claimant would be treated on April 12, 2017, by Dr. Brittain Auer, an orthopedic specialist practicing at Christus Highland. Dr. Auer's assessments included cervicalgia, cervical radiculitis, and lumbar radiculitis. Dr. Auer also noted disc degeneration at C5-6. Regarding the cause of claimant's cervical complaints, Dr. Auer deferred to the physicians who treated claimant closer in time to the August 2009 accident.[3]

---

[3] Dr. Auer declined to see claimant again once he discovered that claimant's injury was the subject of litigation.

4

Claimant returned to Dr. Guthikonda in 2017 and used his private health insurance to pay for his treatment, since the surgery was not approved by defendants. Dr. Guthikonda obtained an MRI of claimant's cervical spine which showed spinal stenosis at C5-6 and C6-7. Dr. Guthikonda performed an anterior cervical discectomy fusion ("ACDF") surgery at levels C5-6, 6-7 on November 29, 2017. During his deposition, Dr. Guthikonda stated the history related to him by claimant included a motor vehicle accident in 2009, surgery on his left arm immediately after the accident, and neck and arm pain that got progressively worse over the last several years. Dr. Guthikonda testified that a person could have pre-existing spinal stenosis that is asymptomatic, but, because of trauma, it becomes symptomatic. Based upon the history claimant related to him, Dr. Guthikonda stated that it sounded as if his symptoms started in 2009. Dr. Guthikonda testified, "[I]t seems like, in his case, that the fact that he had this accident is what started his symptoms. . . . [I]n his case, I think the symptoms were precipitated by the trauma."

On March 20, 2018, claimant filed the instant workers' compensation claim against the defendants, Nu Verra and its workers' compensation insurer, the Insurance Company of the State of Pennsylvania, seeking weekly TTD benefits, penalties and attorney fees. He alleged that he was entitled to penalties and attorney fees because of Nu Verra's arbitrary and capricious failure to authorize surgery and pay the benefits to which he was entitled following the surgery.

Claimant was the only witness to testify at trial; the other evidence presented consisted of medical documents and transcripts of deposition testimony. At the conclusion of the trial, the WCJ took the case under

advisement and instructed counsel to provide post-trial briefs on the issue of whether a work-related aggravation of a pre-existing degenerative condition is compensable after the aggravation resolves and "returns to baseline," and then requires surgery due to the natural progression of the degenerative condition.

In her detailed reasons for judgment, the WCJ found that claimant failed to establish by a preponderance of the evidence a causal relationship between claimant's 2009 work-related accident and his latest complaints that led to his cervical surgery in November 2017. The WCJ concluded that because claimant did not meet his burden of proof and did not establish that his surgery was necessary as a result of his prior job-related injury, as opposed to his pre-existing degenerative disc disease, the period of disability following the surgery was not compensable. The WCJ rendered judgment in favor of defendants, dismissing claimant's claims for TTD benefits, penalties and attorney fees. Claimant has appealed from this adverse judgment.

**DISCUSSION**

An employee is entitled to workers' compensation benefits for a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A); *Iberia Medical Center v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421; *Buxton v. Iowa Police Dep't*, 09-0520 (La. 10/20/09), 23 So. 3d 275. The claimant in a workers' compensation case has the burden of establishing his disability and its causal connection with the work-related accident by a preponderance of the evidence. *Buxton, supra*; *Bradley v. St. Francis Medical Center*, 51,572 (La. App. 2 Cir. 09/27/17), 244 So. 3d 722. The burden is met when the evidence, taken as a whole,

6

shows that it is more probable than not that the work-related accident somehow caused or contributed to the disability; it is not necessary that the exact cause be found. *Bradley, supra; Modicue v. Graphic Packaging*, 44,049 (La. App. 2 Cir. 02/25/09), 4 So. 3d 968.

A pre-existing condition will not bar an employee from recovery if he establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed. *Peveto v. WHC Contractors*, 93-1402 (La. 01/14/94), 630 So. 2d 689; *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So. 2d 320 (La. 1985); *Bradley, supra; Hill v. IASIS Glenwood Regional Medical*, 50,531 (La. App. 2 Cir. 05/18/16), 195 So. 3d 536, *writ denied*, 16-1357 (La. 11/07/16), 209 So. 3d 104; *Henderson v. Graphic Packaging Int'l, Inc.*, 48,491 (La. App. 2 Cir. 11/20/13), 128 So. 3d 599. The employee's pre-existing condition is presumed to have been aggravated by the accident if the employee proves (1) the disabling ***symptoms did not exist*** before the accident, (2) commencing with the accident, the disabling ***symptoms appeared and manifested themselves thereafter***, and (3) either medical or circumstantial evidence indicates a ***reasonable possibility of a causal connection*** between the accident and the ***aggravation or activation*** of the disabling condition. *Walton, supra; Peveto, supra; Bradley, supra; Henderson, supra.*

The claimant is not required to prove the exact cause of his disability, but he must demonstrate by a preponderance of the evidence that the accident has a causal connection with the disability. *Iberia Medical Center, supra; Hill, supra; Crawford v. Town of Grambling*, 51,090 (La. App. 2 Cir. 01/11/17), 211 So. 3d 660, *writ denied*, 17-0284 (La. 04/07/17), 218 So. 3d

7

110; *Brown v. Offshore Energy Services, Inc.*, 47,392 (La. App. 2 Cir. 08/08/12), 104 So. 3d 494. The worker's testimony alone may be sufficient to discharge this burden, as long as no other evidence discredits or casts serious doubt upon the worker's version of the incident; and the worker's testimony is corroborated by the circumstances following the alleged incident. *Iberia Medical Center, supra*; *Bruno v. Harbert Int'l Inc.*, 593 So. 2d 357 (La. 1992).

A causal connection between the disability and the on-the-job injury can be established when the employee proves that, before the accident, he was in good health, but commencing with the accident, the symptoms of the disabling condition appeared. *Dow v. United Parcel Service*, 48,310 (La. App. 2 Cir. 09/18/13), 124 So. 3d 36; *Scott v. Super One Foods*, 45,636 (La. App. 2 Cir. 09/29/10), 48 So. 3d 1133; *see also Poland v. Kroger, No. 404*, 32,576 (La. App. 2 Cir. 12/08/99), 747 So. 2d 711, *writ denied*, 00-0583 (La. 04/07/00), 759 So. 2d 764. Once the employee has established this presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or combine with the pre-existing disease or infirmity to produce his disability. *Peveto, supra; Bradley, supra; Henderson, supra.*

Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. *Iberia Medical Center, supra; Buxton, supra; Bradley, supra.* Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether the findings are reasonable. The manifest error standard applies even when the decision of the workers'

8

compensation judge is based upon written reports, records, or deposition testimony. *Buxton, supra*.

In the instant case, as stated above, claimant was the only witness who testified at trial. The WCJ found that credibility was not an issue. According to claimant, when he arrived home from the hospital, he called Dr. Soeller to report that he had arm pain, tingling and numbness; Dr. Soeller sent claimant to physical therapy at Willis Knighton North. Claimant's problems did not resolve with therapy, and he noted his complaints whenever he saw Dr. Soeller, whom he has not seen since December 2009. Claimant noted that he had neither experienced any symptoms of tingling or numbness nor had he been under a doctor's care for such symptoms prior to the August 28, 2009, accident.

The claimant further testified that because of the continued tingling and numbness in his left arm and shoulder, he sought treatment with Dr. Ferrell. His complaints to Dr. Ferrell were radiating pain and numbness in his upper back, shoulders and both arms. Dr. Ferrell gave him injections and tried to obtain approval for an MRI beginning in 2010. The defendants finally approved the MRI in 2012. Claimant testified that he had not returned to work in the year 2010 because his neck pain and "left arm still wouldn't have let [him]." He related that his job duties included connecting and disconnecting a 20-foot hose that weighed approximately 70 lbs. According to claimant, when the defendants received the MRI results, they sent him to Dr. Milan Mody, Dr. Ferrell's partner. They also sent him for an IME by Dr. Bilderback. By the time claimant saw Dr. Bilderback, the tingling and numbness symptoms were in both arms and hands. Claimant stated that he gave all three doctors the same history of his work accident

and all three told him that his complaints of tingling, numbness and pain were caused by the accident. Claimant testified he declined to have surgery when Dr. Ferrell recommended it in July 2012, and again when Dr. Mody recommended it in October 2012, because it was not an easy decision to have spinal surgery and he was fearful.

Claimant testified that the pain was so intense in 2014 that he decided he should have the surgery, and he continued to work in pain until his surgery in 2017.   In June 2015, he sought treatment from Dr. Nunley, who was referred to him by a church friend and his supervisor at work.  Claimant stated that he repeated his complaints of pain, tingling and numbness, and also stated that he now had those symptoms in his legs.  Thereafter, claimant sought treatment from Dr. Bharat Guthikonda, who eventually performed the surgery on him on November 29, 2017.  According to claimant, he continued to work in pain until his surgery in November 2017.   Claimant related to Dr. Guthikonda the same history of the work accident and his symptoms—the tingling and numbness was no longer just in his neck, shoulders and arms, but was now in his lower back and legs, and his pain was no longer tolerable.  On cross-examination, claimant said that although there was a three-year gap in treatment, his symptoms did not alleviate and his pain was constant.  Claimant reiterated that he had no problems with, or symptoms related to, his neck before the accident.

We find that the WCJ was clearly wrong in analyzing claimant's claim without giving him the benefit of the presumption of causation, i.e., that claimant's pre-existing degenerative disc disease is presumed to have been aggravated by his accident.  As noted above, the WCJ found the

10

claimant to be credible.[4]  Claimant's unrebutted testimony was that the symptoms of his neck condition which required surgery had not been present prior to his work accident, but instead commenced with the accident and manifested themselves thereafter.[5]  Moreover, claimant's testimony was corroborated by the medical evidence, which established more than the requisite reasonable possibility of a causal connection between the accident and the activation of the disabling condition.  Once this presumption of causation had been established by claimant, the defendants had the burden to produce evidence to persuade the trier of fact that it was more probable than not that the work injury did not accelerate, aggravate, or combine with the pre-existing degenerative disc disease to produce claimant's disabling condition.

The x-rays Dr. Soeller used to conclude that claimant's cervical radiculopathy was chronic in nature and not related to his accident were both taken during his initial treatment of claimant.  Dr. Soeller testified that he did not order an MRI or evaluate claimant for a possible cervical problem.  Thus, it was clearly wrong for the WCJ to place any weight on the initial treating physician's opinion that claimant's employment accident did not have any causative effect on the progression of claimant's cervical disc disease.  This is especially true in light of the contrary opinions expressed by

---

[4] Following the conclusion of the trial, the WCJ stated, "Look, there is evidence that in 2009 he made a complaint on the neck.  That's what usually happens is they don't even have it.  Well you have it. . . .So you're not going to change any of the facts, it's not credibility, it's all just a legal question as to when an aggravation would stop."

[5] This is contrary to the facts before this Court in *Bradley*, *supra*.  In *Bradley*, the claimant's degenerative disc condition had manifested itself prior to his work-related accident; in fact, he had received treatment for complaints related to his condition before his accident. Therefore, the claimant in *Bradley* was not entitled to the presumption of causation. Nonetheless, this Court affirmed the WCJ's determination that the claimant's neck and back injury in a work-related accident contributed to his disabling condition, notwithstanding the existence of the pre-existing disc condition. *Bradley*, 244 So. 3d at 729.

claimant's treating orthopedists, Drs. Ferrell, Mody and Guthikonda, and by Dr. Bilderback, who performed an IME at defendants' request.

The medical records *and the unrebutted testimony of claimant* show that after 2009, claimant continued to experience and report ongoing and worsening symptoms. As noted above, it is undisputed that claimant suffers from a degenerative disc disease that was asymptomatic before the work accident. His symptoms of neck and shoulder pain, radiating into both arms and hands, began almost immediately after the accident, and were consistently expressed and documented in every physician's medical records. Furthermore, there was no proof of any intervening trauma that might have caused claimant's continued cervical symptoms. The medical evidence does not establish that claimant's work-related injury had resolved or that the aggravation of his pre-existing degenerative condition was limited in duration. *See, Delatte v. Pala Group, LLC*, 09-0913 (La. App. 1 Cir. 02/10/10), 35 So. 3d 291, *writ denied*, 10-0562 (La. 05/07/10), 34 So. 3d 865; *Merrill v. Greyhound Lines, Inc.*, 10-0834 (La. App. 4 Cir. 06/29/11), 70 So. 3d 991, *writ denied*, 11-1712 (La. 10/14/11), 74 So. 3d 214. The WCJ found claimant credible, and the record contains no contradictions or inconsistencies in his testimony to call this determination into question. Based on the totality of the evidence, we find that defendants failed to rebut the legal presumption afforded claimant by producing evidence that it is more probable than not that the work-related injury did not accelerate, aggravate, or combine with claimant's pre-existing disc disease to produce the disabling condition that required claimant's surgery. *See, Peveto, supra* at 691; *Merrill, supra* at 998. The WCJ's determination that claimant's need for surgery was related solely to degenerative changes in his back is not

12

reasonably supported by the record. Therefore, this determination is manifestly erroneous and clearly wrong.

Regarding his disability after surgery, claimant testified during his deposition that Dr. Guthikonda performed a three-level cervical fusion on November 29, 2017. After his hospital stay, claimant treated with Dr. Guthikonda for several months before continuing treatment with Dr. Gavin Chico, an internal medicine specialist practicing in Coushatta. Claimant also received five weeks of physical therapy. Claimant testified that he was working as a truck driver "right up until the time" of his surgery, and then went back to work as a truck driver the first week of May 2018. The record shows that the parties stipulated at the hearing to the following: claimant was a full-time employee acting in the course and scope of his employment at the time of his accident in August 2009; the total amount of disability benefits, if awarded, would be for 23 weeks, for the period between November 29, 2017, the date of claimant's surgery, and May 6, 2018, the date that he returned to work, at a rate of $546 per week; and, the total due would be $12,558. Consequently, we will therefore award claimant the temporary, total disability benefits for the 23 weeks of disability following claimant's surgery at the rate of $546 per week (a total of $12,558 for the period of November 29, 2017, through May 6, 2018), with interest on each payment from its due date until the judgment is paid. *See,* La. R.S. 23:1201.3(A); *Hargrave v. State ex rel. Dept. of Transportation and Development*, 09-818 (La. App. 3 Cir. 04/07/10), 35 So. 3d 437, *aff'd*, 10-1044 (La. 01/19/11), 54 So. 3d 1102.

We decline to impose penalties and attorney fees in this case. Our review of the record shows that defendants had sufficient medical evidence

13

from which they could have reasonably controverted claimant's claim that his cervical surgery was causally connected to his August 2009 work accident. Thus, under the facts and circumstances of this case, we do not find that defendants' denial of claimant's request for post-surgery benefits was arbitrary and capricious See, La. R.S. 23:1201(F)(2); *Bradley, supra.*

## CONCLUSION

For the reasons set forth above, the judgment of the Office of Workers' Compensation is reversed in part. We hereby render judgment awarding claimant, Ernest Smith, total, temporary disability benefits of $546 per week for the 23-week period of his disability from November 29, 2017, through May 6, 2018, together with interest on each weekly payment from its due date until the judgment is satisfied. That portion of the judgment of the Office of Workers' Compensation denying claimant's request for penalties and attorney fees is affirmed. All costs are assessed against defendants, Nu Verra Environmental Solutions and the Insurance Company of the State of Pennsylvania.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED.**

14

**COX, J.,** concurs in the result.

I agree with the majority in its ruling on the issues of attorney fees, penalties, and costs associated with this appeal. I concur in the result reversing the WCJ, but for reasons based on the WCJ's error of law. In the written judgment, the WCJ states, "Similarly, once the claimant's condition returns to a 'baseline,' as prior to the work accident, then, benefits are not due. *Williams v. Jones Truck Line, Inc.*, 27,465 (La. App. 2d Cir. 11/1/95), 662 So. 2d [876]; *Lee v. Kenyan Enterprises*, 41,308 (La. App. 2d Cir. 8/31/06), 938 So. 2d 1216." The WCJ continues to discuss this baseline and states, "When Mr. Smith returned to work and was able to perform his prior truck driving job, the work injury no longer presented disabling symptoms or symptoms above the 'baseline' affecting his wage earning capacity." This is an incorrect application of the law in relation to this case.

The term "baseline" has been used in a determination of whether the claimant has reached his maximum medical improvement or his pre-accident state. The two cases cited by the WCJ do not contain a discussion of baseline conditions affecting wage-earning capacity. *Lee v. Kenyan Enterprises, supra*, states, "Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to supplemental earnings benefits (SEB's)." The *Lee* court then discusses SEB's and the claimant's pre-injury wages and wage-earning capacity.

The correct analysis for the trial court to have used is the presumptions and burdens of proof set forth in the majority's opinion and *Williams v. Jones Truck Line, Inc, supra*, as cited by the WCJ. For this

1

reason, I concur in the result, but would respectfully reverse the trial court based on an application of incorrect law.