Judgment rendered May 17, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,982-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AMY SALTER                                    Plaintiff

versus

DESOTO PARISH POLICE JURY                     Defendants
AND JEAN SIMPSON PERSONNEL
SERVICES

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of DeSoto, Louisiana
Trial Court No. 2003450

Shannon Bruno Bishop
Workers' Compensation Judge

* * * * *

THE ANZELMO LAW FIRM                 Counsel for Defendant-
By: Donald J. Anzelmo                Appellant, Jean Simpson
    Charles A. Anzelmo               Personnel Service

THE LAW OFFICE OF                    Counsel for Plaintiff
ALLEN COOPER, LLC
By: J. Allen Cooper, Jr.

* * * * *

Before COX, ROBINSON, HUNTER,
MARCOTTE, and ELLENDER, JJ.

HUNTER, J., concurring in part, and dissenting in part.

**COX, J.**

This case arises out of Worker's Compensation Court District 1W, DeSoto Parish, Louisiana. Amy Salter claimed she injured her arm, wrist, elbow, and hand on May 22, 2019, while working for Jean Simpson Personnel Services ("Jean Simpson") at the DeSoto Parish Animal Shelter. All originally named defendants have been dismissed except for Jean Simpson. The worker's compensation judge ("WCJ") found in favor of Mrs. Salter, awarding her $331.73 in weekly wages, medical treatment, penalties in the amount of $8,000, and attorney fees in the amount of $20,000. Weekly wages and medical treatment were awarded beginning May 31, 2019, without a specified end date. Jean Simpson now appeals. For the following reasons, we modify the weekly benefits and medical treatment to end on October 28, 2019, when Mrs. Salter was discharged from medical treatment by her treating physician. We reverse the judgment granting penalties and attorney fees.

## FACTS

On June 13, 2019, Mrs. Salter filled out a Statement of Injured Worker's Compensation Form. She alleged a work accident occurred on May 22, 2019. She stated, "A coworker and I were taking photos for the animal shelter Facebook[.] I was handling cats & shaking toys to get them to look at the camera [and] my right hand became locked in position." She stated her injury was that her "hand became locked in position, there was increasing pain in hand and wrist."

On June 8, 2020, Mrs. Salter filed a disputed claim for compensation, alleging the following: wage benefits have not been paid; medical treatment has not been authorized; the worker's compensation rate is incorrect; she is

owed reimbursement for mileage, prescription medications, and medical bills; she is owed for TTD and/or SEB and/or PPD and/or PTD;[1] and defendants should pay penalties, interest, and attorney fees.

On June 24, 2020, Jean Simpson filed an answer and exception and denied the following: Mrs. Salter suffered an injury on May 22, 2019; she was temporarily disabled for any reason related to her employment; she is permanently disabled; she suffered an injury resulting in a loss of earning capacity; and she is entitled to rehabilitation services.

All parties agreed to multiple continuations of the trial due to Covid-19 and the additional time needed for discovery. Trial on the matter was held on August 17, 2021. At the beginning of trial, Mrs. Salter and Jean Simpson stipulated to the dismissal of defendants DeSoto Parish Police Jury and Summit Claims Management.

Mrs. Salter's medical history was submitted as evidence at trial. The following is a summary of her medical history that is pertinent to the alleged injury:

- 8/3/2017: Highland Clinic- arthralgia and fibromyalgia; prescribed Gabapentin; ordered x-rays and labs; patient complains of "pain in b/l hands, wrists, knees, and upper back. Symptoms started a few years ago"; formerly diagnosed with RLS (Restless Leg Syndrome); "Neck, wrist, knees ankles and jaw- painful"; "Hands- Left: +TTP at wrist, Range of motion: mild pain w/ motion, Right: +TTP wrist, Range of motion: mild pain w/ motion"; Elbow- Left: Normal, Right: Normal.

- 8/3/2017: Highland Clinic (hand x-ray)- Right: "There is expected mineralization and anatomic alignment. A tiny calcified body seen on the AP view projecting between the triquetrum and lunate measures up to 2 mm in size; this could represent a loose intra-articular body, soft tissue calcification or old fracture fragment." Left: "There is expected

---

[1] TTD stands for temporary total disability; SEB stands for supplemental earnings benefits; PPD stands for permanent partial disability; and PTD stands for permanent total disability.

mineralization and anatomic alignment. No fracture, dislocation or radiopaque foreign body is identified… Unremarkable left hand."

- 8/17/2017: Highland Clinic- fibromyalgia, chronic pain of left knee, and other chronic pain; "Xray of hands ok"; "Hands- Left: +TTP at wrist, Range of motion: mild pain w/ motion, Right: +TTP wrist, Range of motion: mild pain w/ motion"; Elbow- Left: Normal, Right: Normal.

- 5/23/2019: DeSoto Regional Health System- patient complains of wrist pain for two days; "No injury. No swelling, no redness, no weakness. Pain is exacerbated with rotation of the wrists and also palpation of the distal mid and upper forearm and medial epicondyle. No injury noted. No weakness."; Treatment: Medrol tablet, Meloxicam tablet, and forearm band.

- 5/23/2019: DeSoto Regional Health System (Imaging Services Report)- right wrist pain; AP and lateral views of the right wrist were obtained; Findings: "…bones appear intact. No displaced fractures or dislocations seen. Joint spaces appear normal in width."

- 5/31/2019: Shreveport Doctor's Rehab- right hand and wrist pain of 4/10; right arm pain when touching it and certain movements; patient has been wearing immobilizer on right hand; x-ray after injury of hand, wrist, and arm were within normal limits; current medications include Adderall and Prozac daily and Xanax as needed; EXTREMITIES: pain noted in hand and wrist, swelling between thumb and wrist, and range of motion limited due to pain; prescribed Flexeril; no treatment recommendations; patient off work until further notice.

- 7/1/2019: Shreveport Doctor's Rehab- elbow, wrist, and hand pain at 7/10; patient complains of weakness in hand, elbow, and wrist; "EXTREMITIES: Examination of the right elbow, hand, and wrist reveals pain noted on manipulation to the joints. She does have swelling in the right wrist, mostly located between the thumb and wrist. Range of motion is limited in the elbow, wrist, and hand in all planes due to pain. No bruising."; prescribed Flexeril and Tramadol; x-ray from 5/23/2019 was within normal limits; ordered another x-ray; no treatment recommendations; patient currently not working.

- 8/13/2019: Orthopedic Specialists of Louisiana (Initial Evaluation)- pain in right hand and weakness; examination shows an equivocal Tinel's and negative Phalen's; negative Allen's test; mildly tender to palpation to first web space; x-rays on three views are unremarkable; impression: right carpal tunnel; she may continue working.

- 8/26/2019: Shreveport Doctor's Rehab- wrist pain is 1/10; patient states weakness in elbow, wrist, and hand; EXTREMITIES: pain noted in

elbow, hand, and wrist upon manipulation, slight swelling of wrist, and no bruising noted; patient does not need medications; no treatment recommendations; patient currently not working, no strenuous activity or heavy lifting.

- 8/27/2019: Orthopedic Specialists of Louisiana- Nerve studies were done, which came back negative; patient complains of pain in wrist; "She states when she was at work she would take pictures of pit bulls and would have to grab the leash and this would pull her arm"; examination of wrist shows tenderness to de Quervain's area, very mild; Impression: tendinitis in right upper extremity; patient given short arm Velcro forearm splint; prescribed Mobic; patient to remain off work.

- 9/16/2019: Orthopedic Specialists of Louisiana- patient states she is still having some pain; when she wears her brace, she has no pain; examination of wrist shows pain on Watson's maneuver; negative Tinel's and negative Phalen's; impression: right carpal tunnel syndrome; sent to therapy; continue to be off work.

- 9/24/2019: Shreveport Doctor's Rehab- follow-up from work accident on May 22, 2019, "in which her wrist was caught in a dog leas[h]"; patient reports EMG that was normal; 0/10 wrist pain; patient complains of some weakness in wrist; "EXTREMITIES: Examination of the right wrist reveals normal range of motion. Normal strength with grip, finger abduction, finger flexion, and thumb abduction. Negative Tinel's at the elbow and the wrist."; patient does not need medication at this visit; no treatment recommendations; patient is to remain off work.

- 10/7/2019: Orthopedic Specialists of Louisiana (Dr. Acurio)- patient states she is still having pain in hand and wrist; has not been approved for OT; examination shows negative Phalen's; pain on Tinel's maneuver but no electrical sensation; impression: right carpal tunnel syndrome; recommend therapy; patient to remain off work.

- 10/28/2019: Shreveport Doctor's Rehab- no complaints; weakness in wrist intermittently; "EXTREMITIES: Reveals full range of motion without pain, tenderness, or spasms"; "IMPRESSION: Right wrist pain- resolved"; no medication needed; if pain returns in next two to three weeks, come back for a visit; **patient is discharged.** (emphasis added).

- 11/19/2019: Shreveport Doctor's Rehab- **patient was discharged 10/28/2019 with 0/10 pain; patient states she was putting sheets on a bed and pain came back, her arm swelled**; wrist and hand pain 4/10; EXTREMITIES: wrist and hand reveal some swelling and range of motion limited due to pain; prescribed Flexeril; recommend x-rays

4

and PT, but denied by worker's comp; patient to remain off work. (emphasis added).

- 12/19/2019: Shreveport Doctor's Rehab- wrist pain 3/10; hand pain 2/10; EXTREMITIES: pain noted on palpation of wrist and base of thumb; prescribed diclofenac gel; recommend x-rays and PT, but denied by worker's comp; patient to remain off work.

- 1/20/2020: Shreveport Doctor's Rehab- wrist pain 2/10; hand pain 9/10; complaining of elbow pain; patient states she has weakness in wrist; EXTREMITIES: no swelling of wrist, no crepitus noted, no swelling in hand; prescribed Flexeril; recommend x-rays and PT, but denied by worker's comp; patient to remain off work.

- 2/18/2020: Shreveport Doctor's Rehab- complains of wrist and hand pain; pain is 4/10; complains elbow hurts; patient complains of weakness in right hand and wrist; EXTREMITIES: right wrist revealed swelling, no crepitus noted, pain on manipulation to small bones of hand and inner aspect of wrist; no refills needed; recommend x-rays and PT, but denied by worker's comp; patient to remain off work.

- 3/19/2020: Shreveport Doctor's Rehab- complains of elbow, wrist, and hand pain; pain is 3/10; muscle relaxers are making her sleepy and not helping significantly; "EXTREMITIES: reveals some tenderness over the right elbow at the cubital tunnel and also over the lateral epicondylitis. Negative Tinel's over the wrist;" strength in upper extremity is 4/5; prescribed Gabapentin; recommend x-ray and PT, which have been denied by worker's comp; patient is to remain off work.

- 4/20/2020: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- wrist pain is 4/10; elbow pain is 3/10; hand pain is 1/10; patient complains of weakness in right wrist; base of thumb hurts and keeps her from sleeping; patient denies any swelling; prescribed Tizanidine and diclofenac gel; recommend x-ray and PT, but still denied by worker's comp; patient is to remain off work.

- 5/19/2020: Shreveport Doctor's Rehab (phone visit- no physical exam)- elbow pain is 3/10; wrist pain is 2/10; "EXTREMITIES: reveals pain noted per patient at base of her right thumb and her wrist, as well as elbow. There is no swelling or crepitus in the wrist or elbow per patient."; prescribed Tizanidine; recommend x-ray and PT, but still denied by worker's comp; patent is to remain off work.

- 6/17/2020: Shreveport Doctor's Rehab (phone visit- no physical exam)- elbow pain is 6/10; patient states she has weakness in wrist; "EXTREMITIES: Per patient, she states that she has pain in her right elbow. The pain worsens with flexion, and whenever she is lifting or grabbing anything with her right arm the pain worsens then, too. She denies any swelling or crepitus in the right elbow. She states she has

weakness in her wrist and is unable to pick up any heavy objects with her right hand;" prescribed Tizanidine; recommend PT; patient is to remain off work.

- 7/16/2020: Shreveport Doctor's Rehab (phone visit- no physical exam)- elbow pain is 5/10 currently and 2/10 or 3/10 when not in use; patient states she has pain in elbow, which hurts when she flexes, lifts, or reaches behind her; patient complains of weakness in wrist; patient states she is not swollen, has no clicks or crepitus at elbow, and no bruising; prescribed Tizanidine; recommend PT; patient to remain off work.

- 8/14/2020: Shreveport Doctor's Rehab (in person visit)- elbow pain is 4/10; patient states she has weakness in wrist; "EXTREMITIES: reveals pain in her right elbow when she flexes and states it hurts worse when she lifts anything with her right arm. There is no swelling. She states that her elbow does not click; just pain."; strength is 4/5 in right upper extremity; prescribed Tizanidine; recommended MRI and PT; patient to remain off work.

- 9/15/2020: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 2/10; patient states medication is working, but she has to take more than the recommended dose for relief; patient complains of weakness in wrist; recommend MRI and PT, but denied by worker's comp; patient to remain off work; refills not needed at this time.

- 10/21/2020: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 3/10; patient states she is out of muscle relaxers; patient denies any swelling; prescribed Tizanidine; recommended MRI and PT, but denied by worker's comp; patient to remain off work.

- 12/30/2020: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 6/10; patient complains of wrist pain and swelling; prescribed Tizanidine; recommend MRI and PT; patient to remain off work.

- 2/4/2021: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 3/10; wrist pain is 5/10; patient states wrist is often swollen & weakness in right wrist, hand, and elbow; patient states pain is worse when she uses elbow/wrist; prescribed Tizanidine; requested MRI and PT, but denied by worker's comp; patient is to remain off work.

- 3/8/2021: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 4/10; wrist pain is 5/10; patient states: pain in elbow and wrist, no swelling, elbow hurts when moved in all directions, and swelling in wrist when she uses it; refilled Tizanidine;

requested MRI and PT, but denied by worker's comp; patient is to remain off work.

- 4/6/2021: Shreveport Doctor's Rehab (telemedicine visit- no physical exam)- elbow pain is 4/10; wrist pain is 3/10; patient states: pain in elbow and wrist, no swelling, no crepitus, can move elbow and wrist in all directions, and repetitive movement causes her wrist to swell; refilled Tizanidine; requested MRI and PT but denied by worker's comp; patient is to remain off work.

Mrs. Salter was the first to testify at trial. She stated that while working for Jean Simpson she was a kennel tech at DeSoto Parish Animal Shelter. She stated that prior to May 22, 2019, she had not had any accidents on the job, but she did have stress and strain from performing all the job activities. She described her job activities as cleaning up after animals, feeding them, keeping the facilities clean, answering phones, stocking pet food and supplies, bathing the animals, moving the animals around, and assisting with animal medical needs.

Mrs. Salter recalled the following when questioned about her May 22, 2019, accident. She and a coworker were taking pictures of the animals to post online; she was shaking, rattling, and squeezing toys to get the animals to look at the camera, and while doing so, she felt a "cord or something" pop. She stated that her hand would not move and she could not turn her wrist. She described the toys as "like things on a stick. They would dangle, or squeaky toys." She testified that a few hours after the onset of the pain in her hand and wrist, the pain gradually increased and moved to her elbow.

Mrs. Salter stated that her coworker who was taking the pictures noticed that something was wrong and asked her if she was okay. She testified that she walked out of the room, her hand was swollen, and another coworker brought her an ice pack. She stated that her supervisor also came to

7

check on her but was called away. She testified that the director of the animal shelter allowed her to leave about an hour early. Mrs. Salter stated that she did not seek medical treatment the day of the incident but went the following day to DeSoto Regional.

On cross-examination, Mrs. Salter admitted that the toys were light-weight objects and she was using them for an hour or hour and a half before the onset of pain. When asked why her elbow is not mentioned in some medical records, she stated that the elbow pain comes and goes and her hand/wrist are the main problems. She stated that she did not attempt to go back to work or find a job after she was discharged on October 28, 2019. She further testified that she remembered that her problems seemed to be resolved but stated the pain returned so she went back for medical treatment on November 19, 2019.

When questioned about her August 3, 2017, visit to Highland Clinic about pains in her bilateral hands, wrists, knees, and upper back, she stated:

> With the knees and all that, it did start a few years ago. I would have problems with my knees and my back. But the wrist just really did last just a month or so. I would wear a brace occasionally, and then it'd go away. But it -- the wrist problem didn't last for years, just the problem with knees and other things like that just aching until I finally went to see a doctor to see if there was arthritis or anything going on.

Mrs. Salter stated that although she was prescribed Gabapentin for fibromyalgia, she only used the medication when her Restless Leg Syndrome would bother her, and she did not take it daily. During Mrs. Salter's testimony, Jean Simpson pointed out that Mrs. Salter failed to indicate on her employment paperwork that she was treated for anxiety and depression.

Daniel Salter, Mrs. Salter's husband, was called to testify. He stated that he spoke with Mrs. Salter over the phone after the accident and she said

8

her hand "just locked up" and she did not know what happened. Mr. Salter's narrative of what Mrs. Salter told him after the accident coincided with Mrs. Salter's testimony. He testified that he saw swelling on the back of Mrs. Salter's hand and her wrist. He stated that he has seen Mrs. Salter stop doing day-to-day tasks like washing dishes when her arm starts hurting. He stated that some of Mrs. Salter's recreational activities have been limited as well. He testified that when they went on a cruise, she could not play cornhole and was only able to participate in activities if they did not require the use of her arm.

Jean Simpson called Constance Philipp to testify. She testified that she is the director at Animal Services in DeSoto Parish. She stated that she was told the following after the incident:

> Both Kayli and Amy came to the lobby after they were finished with that activity and let me know that Amy had expressed "Ow," during the event, and Kayli said, "Do you want to continue?" And she goes, "Yes, it's fine." And when they came out, Amy indicated that it was difficult to impossible to move her wrist. I asked her at that point if she wanted to go to the doctor, and she said, "No, I'll just, you know, see how it goes." And I said, "Well, go to the back, put ice on it," of which Adriana, the supervisor, went back there and looked at things as well and said she could move her fingers and -- and bend her wrist and -- but when Amy came up, since it wasn't a hundred percent per her assessment, I said "Well, why don't you go home for the rest of the day, let it relax, keep ice on it." And I suggested strongly that if it wasn't better in the morning she go seek medical attention.

Ms. Philipp testified that she asked Mrs. Salter if she had ever had any problems with her right hand; Mrs. Salter told Ms. Philipp that she had problems with her left hand and had fibromyalgia. Ms. Philipp testified that although she did not look closely at Mrs. Salter's hand, she did not see any swelling. She stated that Mrs. Salter came back to work for a few hours on May 28, 2019, but did not stay long. On May 28, 2019, Mrs. Salter told Ms.

Philipp that her hand still hurt and she was going to go to another doctor because the first doctor did not "find anything wrong[.]" Ms. Philipp testified that although she attempted to call and text Mrs. Salter, she has not been in contact with her since May 28, 2019. Ms. Philipp described the toy as a fishing rod without a reel with a feather or bells hanging from the string. She stated the "rod" is bounced up and down and the cat attacks the feathers or object that is hanging from the string. She also described a small stuffed monkey with a squeaker toy inside. She stated that to entice the cat to look toward the camera, the employee will shake the stuffed animal and squeeze the squeaker between their thumb and finger. Jean Simpson attempted to admit photos of the toys, but the WCJ did not allow them because it was not listed in their pretrial exhibit list.

Both parties filed post-trial briefs. The WCJ filed its written reasons for judgment on February 14, 2022. It stated that although defendants asserted that the doctor's opinions were tainted by an inaccurate account of Mrs. Salter's medical condition, no additional evidence was presented to the court to show that the doctors would have changed their opinions had they been presented with additional medical history. The WCJ found that Mrs. Salter met her burden to show that her injuries were caused by the work accident and awarded weekly wage benefits of $331.73 from May 31, 2019, without a specified end date. The WCJ awarded Mrs. Salter medical treatment pursuant to the medical treatment guidelines. The WCJ stated there was a lack of evidence to dispute the causal connection between Mrs. Salter's injuries and accident and no additional evidence was presented to show that Mrs. Salter was capable of performing any work. The WCJ awarded $8,000 in penalties for failure to authorize medical treatment, failure to pay medical

10

expenses, and failure to pay indemnity benefits and awarded $20,000 in attorney fees. The WCJ signed the judgment memorializing those rulings on February 7, 2022.

On March 4, 2022, Jean Simpson filed a "motion and order to recall notice of signing of final judgment and to reissue corrected notice of signing of final judgment or, alternatively, petition and order for suspensive appeal." It noted that the postmark of the notice of signing of final judgment was dated February 22, 2022, which was 14 days after the stated date of mailing. It argued that by the time it received the judgment, the time for filing a motion for new trial had already passed and it had inadequate time to properly address available remedies. Jean Simpson also pointed out that the notice of signing of final judgment was defective because it states that the Honorable Linda Lea Smith signed the final judgment, but Judge Shannon Bruno Bishop actually rendered the judgment. Jean Simpson requested that the WCJ recall the notice of signing of final judgment, correct the notice to properly identify the judge, and reissue the judgment to afford defendants ample time to take appropriate action. Jean Simpson stated that if the WCJ refused to grant the requested relief, it wished to file a suspensive appeal of the judgment.

On March 14, 2022, the WCJ signed an order granting Jean Simpson's motion and suspensive appeal.

## DISCUSSION

*Accident & Injury*

As quoted below, the definition of accident includes the finding of an injury. Therefore, these two arguments will be discussed together.

Jean Simpson argues the trial court erred in finding that Mrs. Salter met her burden of proving the occurrence of a compensable accident. Jean

11

Simpson argues that the trial court based its ruling on the fact that "it [was] undisputed that Claimant reported a sudden pain as a result of working with the toys," and that "there [was] no evidence to dispute the accident." Jean Simpson asserts that the trial court did not apply the meaning of "accident" as it is defined in the statute.

Mrs. Salter argues that her work-related accident complies with the statutory definition of accident. She states that she has specifically identified the time, place, and manner of the accident and there was an objective manifestation (swelling) of her injury. Mrs. Salter argues that she presented more than a preponderance of the evidence that she suffered a work-related accident. She argues the trial court was not manifestly erroneous and should be affirmed.

Next, Jean Simpson argues the trial court erred in finding that Appellee met her burden of proving that her alleged injuries were caused by an on-the-job injury. Jean Simpson argues that Mrs. Salter presented no competent evidence that an incident on May 22, 2019, caused an alleged injury. Jean Simpson highlights that she failed to prove that she was in good health prior to the alleged accident, which could have established a causal connection between her disability and on-the-job injury.

Mrs. Salter argues that the trial court correctly found that she suffered an injury as a result of the work-related accident. She asserts that before the accident, she did not have any pain in or difficulty with her right wrist, hand, or arm. Mrs. Salter states that since the accident, she has had significant pain in and difficulty using her right wrist, hand, and arm and she has had a significant loss of grip strength. She argues that this creates a legal

presumption that the subject work accident caused her disabling wrist, arm, elbow, and hand injuries.

The purpose of the Workers' Compensation Act is to set up a court-administered system to aid injured workmen by relatively informal and flexible proceedings that are to be interpreted liberally in favor of the workmen. *Slade v. State ex rel. Univ. of La. at Monroe*, 46,720 (La. App. 2 Cir. 11/9/11), 79 So. 3d 463. The Louisiana Worker's Compensation Act defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). In a workers' compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. *Koenig v. Christus Schumpert Health Sys.*, 44,244 (La. App. 2 Cir. 5/13/09), 12 So. 3d 1037.

If the evidence leaves the probabilities evenly balanced, or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. *Millage v. Builder's Lumber & Supply Co.*, 38,635 (La. App. 2 Cir. 7/2/04), 877 So. 2d 1171, *writ denied*, 04-1885 (La. 10/29/04), 885 So. 2d 594. As this Court stated in *Jones v. AT&T*, 28,059 (La. App. 2 Cir. 2/28/96), 669 So. 2d 696:

> While the worker's testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident... Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses, or friends.

13

Where the employee is able to identify an event marking the time the injury occurred or the symptoms arose or suddenly or markedly increased in severity, even if such event occurs during the performance of customary or routine work activities, the employee has established an "accident" within the meaning of La. R.S. 23:1021(1). *Begue v. Crossover, Inc.*, 03-0267 (La. App. 1 Cir. 11/21/03), 868 So. 2d 100.

"Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. La. R.S. 23:1021(8)(a). The statutory requirement of violence is satisfied when the injury has a violent or harmful effect on the employee's physical condition, even if the cause of that change was not in itself violent. *Sparks v. Tulane Med. Ctr. Hosp. & Clinic*, 546 So. 2d 138 (La. 1989). Thus, there is an "injury" when there is "violence," i.e., a harmful effect, to the "physical structure of the body." *Id.*

The claimant seeking workers' compensation benefits for work-related accident is not required to prove the exact cause of her disability, but she must demonstrate by a preponderance of the evidence that the accident has a causal connection with it. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of a causal relation between the accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. *Hill v. IASIS Glenwood Reg'l Med.*, 50,531 (La. App. 2 Cir. 5/18/16), 195 So. 3d 536, *writ denied*, 16-1357 (La. 11/7/16), 209 So. 3d 104.

14

Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact. *Koenig v. Christus Schumpert Health Sys., supra*; *Brien v. Leon Angel Constructors, Inc.*, 42,904 (La. App. 2 Cir. 3/12/08), 978 So. 2d 576, *writ denied*, 08-0802 (La. 6/6/08), 983 So. 2d 919. Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. *Koenig v. Christus Schumpert Health Sys., supra*; *Player v. International Paper Co.*, 39,254 (La. App. 2 Cir. 1/28/05), 892 So. 2d 781. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State through Dept. of Trans. & Dev.*, 617 So. 2d 880 (La. 1993).

The WCJ found that Mrs. Salter met her burden of proof that both an accident and injury occurred. Based on the record before us, the WCJ was reasonable in determining an accident occurred—i.e., an injury was caused by an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently. There is no dispute that Mrs. Salter was bouncing and squeezing the cat toys as part of her job duties while at work. The WCJ was tasked with determining whether squeezing and bouncing the cat toys caused an unexpected, sudden injury. Mrs. Salter testified that as she was squeaking and bouncing the toys for about an hour while taking pictures, she felt some sort of a pop, her wrist immediately froze, she could not move it, and it began swelling. Mrs. Salter reported the incident to her supervisor and she was told she could leave work early. Mr. Salter's testimony corroborated Mrs. Salter's testimony.

15

Ms. Philipp testified that she was informed of Mrs. Salter's incident while helping photograph cats and Mrs. Salter's fibromyalgia and left wrist problems, but she did not observe any swelling in Mrs. Salter's wrist.

Mrs. Salter's medical records indicate that she presented to DeSoto Regional for wrist pain the day after the accident. When physicians could not find a problem, she sought a second opinion with Shreveport Doctor's Rehab. At her first visit with Shreveport Doctor's Rehab on May 31, 2018, the physician noted right wrist/hand pain, swelling, and limited range of motion. Her second visit to Shreveport Doctor's Rehab, on July 1, 2019, revealed similar observations. Mrs. Salter was referred to Orthopedic Specialists of Louisiana. Her visit to that facility revealed pain, tenderness, and possible right carpal tunnel syndrome. Her next five doctor visits revealed her pain trending down, some weakness in her wrist, and little to no swelling. On October 28, 2019, Mrs. Salter had no complaints, intermittent wrist weakness, and full range of motion; the physical examination revealed that her right wrist pain had resolved and Mrs. Salter was discharged. Mrs. Salter did not present to a doctor again until November 19, 2019, when she stated that her arm swelled and she experienced pain after changing bed sheets.

We do not find the WCJ was manifestly erroneous in the factual finding of an accident and injury. Mrs. Salter's testimony revealed an injury—i.e.: a harmful effect on her physical condition; she stated she felt a pop and experienced immobility and swelling. The fact that Mrs. Salter was manipulating lightweight objects at the time of the accident lends itself to showing the unexpected nature of the injury.

In viewing the evidence in a light most favorable to the worker, the record establishes that Mrs. Salter discharged her burden of proof. Mrs.

16

Salter testified that she had not had consistent prior pain in her right arm/hand due to her fibromyalgia; in fact, she stated that it had resolved within a month back in 2017. Neither party presented medical testimony regarding the connection of fibromyalgia to the injury. The WCJ highlighted that there was no medical testimony regarding the fibromyalgia and how that would have altered the analysis of the injury.

These assignments of error lack merit.

*Continuing Disability*

Jean Simpson argues that the trial court erred in finding that Appellee met her burden of proving that she had a continuing disability. Jean Simpson asserts that an employee is entitled to receive TTD benefits only if she can prove by clear and convincing evidence, without any presumption of disability, that she is physically unable to engage in any employment or self-employment. Jean Simpson argues that Mrs. Salter's medical records show she was essentially pain-free in August and September of 2019 and was released to return to work on August 13, 2019. Jean Simpson asserts that her continuing subjective complaints of pain are the only thing that kept her from returning to work and the complaints of pain do not justify TTD benefits.

Mrs. Salter argues that once she proved that she could no longer perform her job at Jean Simpson, it became Jean Simpson's burden to prove that there is another job that she can perform. She asserts that because Jean Simpson has not presented any evidence to that effect, she is entitled to continuing indemnity until that occurs.

Benefits for TTD are based on "temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was

17

customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience[.]" La. R.S. 23:1221(1)(a). TTD may not be awarded if the claimant can engage in odd-lot employment, sheltered employment, or employment while working in any pain. La. R.S. 23:1221(1)(b). Compensation may be made "for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." La. R.S. 23:1317(A). The finding of disability, however, is a legal rather than a purely medical determination. *Harper v. Horseshoe Casino*, 41,470 (La. App. 2 Cir. 10/19/06), 942 So. 2d 589, and citations therein. The WCJ must look to the totality of the evidence, both lay and medical. *Hill v. IASIS Glenwood Reg'l Med., supra.*

Here, we find the WCJ erred in awarding benefits beyond October 28, 2019, when Mrs. Salter was discharged. Mrs. Salter's medical records indicate that she was pain-free prior to October 28, 2019, when she would wear her arm brace. On November 19, 2019, Mrs. Salter presented to Shreveport Doctor's Rehab with complaints of arm pain following a new injury, which occurred while she was home changing bed sheets. Therefore, Mrs. Salter's complaints of pain were associated with the subsequent injury, not the work accident. Based on the record, Mrs. Salter was able to continue working, even if she was limited by no heavy lifting and wearing her brace as needed. Therefore, we modify Mrs. Salter's award of weekly wages and medical treatment to continue only through October 28, 2019, when she was discharged. We reverse the WCJ's award of any and all benefits beyond October 28, 2019.

18

*Photograph*

Jean Simpson argues that the trial court abused its discretion by failing to allow the photograph of the cat toy into evidence.  Jean Simpson argues that the trial court abused its discretion because without the photo, this Court "cannot fully grasp the soft and lightweight nature of the toy, and the extreme unlikelihood that it caused severe injuries" to Mrs. Salter.  Jean Simpson asks that this Court find that the trial court abused its discretion in this respect.

Mrs. Salter asserts that the trial court properly excluded Jean Simpson's photograph of the cat toys because it was not produced to the court or plaintiff prior to trial along with its other exhibits.  She argues that even if the trial court should have allowed the evidence, the exclusion is harmless error because the evidence makes no significant difference in the outcome.

A ruling on the admissibility of evidence is a question of law and is not subject to the manifest error standard of review.  *Trascher v. Territo*, 11-2093 (La. 5/8/12), 89 So. 3d 357, citing Frank L. Maraist, *Evidence & Proof*, 2 ed. (19 La. Civ. L. Treatise, Thomson West ©2007); *Berry v. Anco Insulations*, 52,671 (La. App. 2 Cir. 5/22/19), 273 So. 3d 595.  A district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion.  *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So. 2d 706; *Berry v. Anco Insulations, supra.*  On appeal, the court must consider whether the contested ruling was erroneous and whether the error affected a substantial right of the party.  La. C.E. art. 103(A); *Berry v. Anco, supra.*  If not, reversal is not warranted.  *Berry v. Anco, supra.*

Mrs. Salter and Ms. Philipp both described the cat toys for the WCJ.  Ms. Philipp's description was particularly detailed.  The record sufficiently

communicates the lightweight nature of the cat toys in order for our sufficient review of the case. Thus, the lack of the photo did not have a substantial effect on the outcome. We perceive no abuse in the WCJ's discretion. This assignment of error lacks merit.

*Penalties and Attorney Fees*

Jean Simpson argues that the trial court erred in awarding penalties and attorney fees to Mrs. Salter, and erred in determining the amount thereof. Jean Simpson submits that penalties and attorney fees are to be awarded when the employer fails to pay benefits in limited circumstances. However, Jean Simpson highlights that if the claim is reasonably controverted, the penalties and attorney fees awards do not apply. Jean Simpson argues that there was a reasonable basis to deny the claim because Mrs. Salter only reported wrist pain from dangling a lightweight toy, obtained no diagnosis based on objective findings, and had pre-existing conditions that were not disclosed to her providers. For this reason, Jean Simpson requests that this Court reverse the award of penalties and attorney fees. In the alternative, if this Court decides to uphold the award of penalties and attorney fees, Jean Simpson requests the amount be reduced.

Mrs. Salter asserts that the trial court clearly found that Jean Simpson did not reasonably controvert the claim (as described in the previous arguments in favor of the trial court's ruling); therefore, the award of penalties and attorney fees was within the trial court's discretion and not manifestly erroneous.

Mrs. Salter answered the appeal and requested an increase in attorney fees as a result of the work necessitated by the instant appeal. She requests a fee increase of $10,000 for a total of $30,000 in attorney fees. Jean Simpson

20

argues that she has failed to provide any reason for the increase. Jean Simpson highlights its previous argument that the trial court's award of penalties and attorney fees was error and should be reversed.

Pursuant to La. R.S. 23:1201(F), an employee is entitled to an award of both penalties and attorney fees if the employer or insurer fails to commence payments of benefits timely or to pay continued installments timely (or to pay medical benefits timely) unless the claim is reasonably controverted.

Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of worker's compensation benefits are penal in nature and must be strictly construed. *Taylor v. Hollywood Casino*, 41,196 (La. App. 2 Cir. 06/28/06), 935 So. 2d 293; *Lewis v. Chateau D'Arbonne Nurse Care Center*, 38,394 (La. App. 2 Cir. 04/07/04), 870 So. 2d 515. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. *J.E. Merit Constructors Inc. v. Hickman*, 00-0943 (La. 01/17/01), 776 So. 2d 435; *Slade v. State ex rel. Univ. of La. at Monroe*, *supra*.

We conclude that Mrs. Salter has not established her entitlement to penalties or attorney fees. Although Jean Simpson was unsuccessful in presenting sufficient evidence to rebut Mrs. Salter's claim and negate the finding of an accident and injury, we do not find that the refusal to pay benefits was arbitrary or the claim was not reasonably controverted. Because of the nature of Mrs. Salter's accident and injury, as well as her discharge from medical care, we cannot say that Jean Simpson acted unreasonably in disputing her claim. Therefore, we reverse the WCJ award of penalties and attorney fees in favor of Mrs. Salter.

An increase in attorney fees is usually awarded when the defendant appeals but does not obtain relief, and when the appeal has necessitated additional work on the part of claimant's counsel. *Caparotti v. Shreveport Pirates Football Club*, 33,570 (La. App. 2 Cir. 8/23/00), 768 So. 2d 186, *writ denied*, 00-2947 (La. 12/15/00), 777 So. 2d 1230. Because this claim has been reasonably controverted, there is no statutory basis for the award of attorney fees on appeal. Therefore, we decline to grant Mrs. Salter's request for attorney fees for this appeal.

## CONCLUSION

For the reasons stated above, we affirm the finding of an accident and injury; we amend the weekly benefits and medical treatment to end on October 28, 2019, when Mrs. Salter was discharged; and we reverse the judgment granting penalties and attorney fees. Mrs. Salter's request for attorney fees on appeal is denied. Each party bears their costs in this appeal.

**AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART.**

**HUNTER, J.**, **concurring in part, and dissenting in part.**

I concur in the majority's conclusion the WCJ was not clearly wrong in finding Mrs. Salter met her burden of proving she sustained a compensable accident and injury.

However, based on the factual circumstances of this case, I respectfully dissent from the majority's determination the WCJ was manifestly erroneous in concluding Mrs. Salter met her burden of proving she was "disabled from work and is entitled to indemnity benefits from May 31, 2019, and ongoing," in addition to penalties and attorney fees.

Under certain circumstances, an aggravation of an injury initially sustained at work is regarded as compensable, obligating the employer to continue paying compensation benefits, even in instances where the aggravation develops away from the premises and when the claimant is no longer employed by the employer. *Buxton v. Iowa Police Dept.*, 09-0520 (La. 10/20/09), 23 So. 3d 275; *Stewart v. Hospitals Affiliates Int'l, Inc. of Baton Rouge*, 404 So. 2d 944 (La. 1981) (a fall at home was causally connected to an at-work injury that weakened claimant's leg). The aggravation is regarded as a development of the initial accident even though the aggravation develops away from the employer's premises after employment has terminated. *Id.*

The Louisiana jurisprudence is consistent with most jurisdictions, wherein the general rule is that "natural consequences that flow from the primary injury are compensable, absent an independent intervening cause." Karenina M. Darmer, *Worker's Compensation for Off-Site Aggravation of Employment–Related Injuries– Blackwell v. Bostitch, 591 A.2d 384 (R.I.1991)*, 26 Suffolk U.L.Rev. 529, 532-533 n. 18, *citing Hanover Ins. Co. v. Allstate Ins. Co.*, 554 So. 2d 1261, 1264-1265 (La. App. 1 Cir.1989)

1

(parties stipulated the off-the-job automobile accident occurred before claimant had fully recovered from surgery to his knee necessitated by a work injury; the surgeon testified the knee was still highly susceptible to injury).

The key question is the relationship between the second injury and the initial, work-related injury. The courts have held that an accident occurring away from work is compensable, where the work-related injury has not healed at the time of the accident, and as such, rendered the employee susceptible to further aggravating injuries. *Buxton*, *supra*; *see also Hughes v. General Motors Guide Lamp Div.*, 469 So. 2d 369 (La. App. 2 Cir. 1985) (testimony of two physicians, plus that of lay witnesses, established an "overwhelming preponderance of the evidence" of a causal relationship between the two injuries).

In *Alphonso v. Exxon Mobil*, 20-0276 (La. App. 4 Cir. 12/9/20), 2020 WL 7240131 (unpublished), *writ denied*, 21-00009 (La. 3/2/21), 311 So. 3d 1048, the claimant injured his left knee while at work and underwent two surgeries. The claimant continued to experience pain and instability in his left knee. Nearly two years after the initial work-related injury, the claimant re-injured his left knee at home while hanging Christmas lights. His orthopedic surgeon diagnosed the claimant with suspected re-aggravation of the injuries he sustained in the work accident. The claimant filed a disputed claim for workers' compensation. The WCJ awarded benefits to the claimant and ordered the employer to pay penalties, interest, and attorney fees. The court of appeal affirmed, stating:

> *Buxton* can be distinguished from the case at bar. In *Buxton*, we have a claimant who aggravates a back injury caused by a work-related accident when he has involved in a second accident where he collided with a cow. This was the aggravation of a pre-existing injury by an independent later

2

accident. In the instant case, [the claimant] continued to have problems with his left knee after his work-related accident and subsequent surgeries. In fact, the WCJ believed that the weakened condition of [the claimant's] knee was a cause of his 2017 accident. As such, his 2017 accident and resulting injury could be related back to his work accident and was therefore the aggravation of his on-the-job injuries, not a new, unrelated injury.

*Id*. at 2.

In the instant case, as the majority noted, whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ, and the factual findings of a WCJ are subject to the manifest error standard of review. *Iberia Med. Ctr. v. Ward*, 09-2705 (La. 11/30/10), 53 So. 3d 421; *Buxton*, *supra*.

Herein, although Mrs. Salter was released to return to work, she was only free from pain when she wore her arm brace. Being pain-free only with the assistance of a brace demonstrated Mrs. Salter continued to exhibit instability in her wrist. Thereafter, she suffered another injury, which aggravated the prior injury.

Historically, this Court has recognized the great deference afforded to the factual findings of the trier of fact. It is our duty to objectively review the findings in light of the entire record to determine whether the WCJ committed manifest error.

Further, because one purpose of the workers' compensation law is to promptly provide compensation and medical benefits to an employee who has suffered a work-related injury, a failure to timely provide payment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112; *Trejo v. Canaan Constr.,*

3

*LLC*, 52,697 (La. App. 2 Cir. 6/26/19), 277 So. 3d 499. La. R.S. 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer's failure to pay benefits or authorize medical treatment. La. R.S. 23:1201(F)(2) provides that the provision is inapplicable if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer had no control. *See*, *Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, *supra*; *Smith v. Graphic Packaging, Inc.*, 51,590 (La. App. 2 Cir. 9/27/17), 244 So. 3d 755, *writ denied*, 17-1806 (La. 12/15/17), 231 So. 3d 640.

In order to reasonably controvert a claim, a defendant must have some valid reason or evidence upon which to base the denial of benefits. *Lafayette Bone & Joint Clinic*, *supra*; *Trejo*, *supra*. Reasonably controverting a claim means that an employer has sufficient factual and medical information to reasonably counter that provided by the claimant. The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. *Id.*

In the instant case, the WCJ judge specifically found the claim was not reasonably controverted. The WCJ stated:

> The factual evidence, including the testimony of the Employer, show Claimant suffered an immediate onset of pain while performing her work duties. Further, the medical evidence supports a showing that Claimant's injuries were caused by the May 22, 2019 accident. Claimant's doctors opined as such and there was not conflicting medical [evidence] to show otherwise. There was a lack of evidence to dispute the causal connection between Claimant's injuries and accident.

My concern lies squarely within the mandatory language of La. R.S. 23:1201. The language serves as both a guiding light and a statutory

4

framework for implementation, thus removing any discretion from the Court. Ergo, if the conditions of the provision are met, then fees shall be included. Any disagreement with the provision, in theory, is an issue for the legislative branch. However, as to its application, I see no abuse of discretion in the WCJ's finding the employer failed to reasonably controvert the claim. As the WCJ noted, the employer did not present any valid reason or evidence upon which to base the denial of benefits.

After reviewing the record in this case, I believe the WCJ's findings were reasonable. In both appearances before the Court, nothing was provided to the Court to evidence a separate and distinct determination of this matter being reasonably controverted, thus justifying any discontinuation of benefits reasonably well-grounded in fact or law. Consequently, I can only conclude the WCJ did not manifestly err in concluding Ms. Salter is entitled to benefits, penalties, and attorney fees, and I would affirm the WCJ's judgment.